No. 20-18

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FOURTH CIRCUIT

**UNITED STATES OF AMERICA,**

**Appellant,**

**v.**

**DUSTIN HIGGS,**

**Appellee.**

*Appeal from the United States District Court for the*
*District of Maryland, Southern Division,*
*Honorable Peter J. Messitte, U.S. District Judge*

## BRIEF OF APPELLANT AND, IN THE ALTERNATIVE, PETITION FOR WRIT OF MANDAMUS

**Jeffrey A. Hall**
**Counsel to the Assistant**
   **Attorney General**
**Civil Division**
**Department of Justice**
**950 Pennsylvania Ave. NW**
**Washington, DC 20530**
**(202) 353-8679**

**December 31, 2020**

**Robert K. Hur**
**United States Attorney**

**Ellen E. Nazmy**
**Special Assistant United States Attorney**
**6500 Cherrywood Lane, Suite 200**
**Greenbelt, Maryland 20770**
**(301) 344-4433**

*Attorneys for the Appellant*

**TABLE OF CONTENTS**

INTRODUCTION .......................................................................................................1

JURISDICTIONAL STATEMENT ............................................................................5

STATEMENT OF THE ISSUE...................................................................................5

STATEMENT OF THE CASE....................................................................................6

SUMMARY OF ARGUMENT .................................................................................11

STANDARD OF REVIEW ......................................................................................13

ARGUMENT ...........................................................................................................13

      I.      THE DISTRICT COURT ERRED IN REFUSING TO DESIGNATE ANOTHER STATE FOR IMPLEMENTATION OF HIGGS'S FEDERAL DEATH SENTENCE........................................................................................13

            A. The FDPA Required the District Court to Designate an Alternative State for Implementation of Higgs's Federal Death Sentence.......15

            B. The Designation of an Alternative State as Required by the FDPA Is Not an Impermissible Modification of the Sentence .................23

      II.     THIS COURT HAS JURISDICTION TO RESOLVE THIS CASE EXPEDITIOUSLY ...........................................................27

            A. This Court Can Resolve The Appeal Expeditiously Under 28 U.S.C. 1291 ..........................................................................................27

            B. In the Alternative, This Court Could Promptly Issue a Writ of Mandamus ..............................................................................29

CONCLUSION.........................................................................................................32

STATEMENT REGARDING ORAL ARGUMENT

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

## CASES

*Andres v. United States*,
   333 U.S. 740 (1948)..................................................................15, 16, 19

*Barr v. Hall*,
   No. 20A102, 2020 WL 6797719 (U.S. Nov. 19, 2020)..............................10, 28

*Barr v. Lee*,
   140 S. Ct. 2590 (2020)...............................................................10, 27, 28

*Barr v. Purkey*,
   140 S. Ct. 2594 (2020)............................................................................28

*Barr v. Purkey*,
   141 S. Ct. 196 (2020)..............................................................................28

*Barr v. Roane*,
   140 S. Ct. 353 (2019)..............................................................................20

*Baze v. Rees*,
   553 U.S. 35 (2008)..........................................................................*passim*

*Bellard v. State*,
   157 A.3d 272 (Md. 2017) .........................................................................9

*Bucklew v. Precythe*,
   139 S. Ct. 1112 (2019)........................................................................15, 31

*Cheney v. U.S. Dist. Court*,
   542 U.S. 367 (2004)......................................................................30, 31, 32

*Dillon v. United States*,
   560 U.S. 817 (2010)................................................................................24

*Evans v. State*,
2016 WL 7589914 (Md. Ct. Spec. App. Dec. 27, 2016) ....................................9

*Ex parte Park & Tilford*,
245 U.S. 82 (1917) ..........................................................................................30

*Great-West Life & Annuity Ins. Co. v. Knudson*,
534 U.S. 204 (2002) ........................................................................................21

*Griffin v. Oceanic Contractors, Inc.*,
458 U.S. 564 (1982) ........................................................................................21

*Hall v. Barr*,
2020 WL 6743080 (D.D.C. Nov. 16, 2020) ....................................................28

*Hall v. Barr*,
830 Fed. Appx. 8 (D.C. Cir. 2020) ..................................................................28

*Higgs v. Daniels*,
No. 16-cv-321 (S.D. Ind. Apr. 30, 2020).........................................................9

*Higgs v. Watson*,
No. 20-2129 (7th Cir. filed June 29, 2020).......................................................9

*In re Fed. Bureau of Prisons' Execution Protocol Cases*,
955 F.3d 106 (D.C. Cir.) .........................................................................*passim*

*In re Fed. Bureau of Prisons' Execution Protocol Cases*,
980 F.3d 123 (D.C. Cir. 2020) ........................................................................28

*In re Trump*,
958 F.3d 274 (4th Cir. 2020) ..........................................................................30

*Kerr v. U.S. Dist. Ct.*,
426 U.S. 394 (1976) ........................................................................................30

*Radzanower v. Touche Ross & Co.*,
426 U.S. 148 (1976) ........................................................................................25

*United States v. Chacon,*
533 F.3d 250 (4th Cir. 2008) ...............................................................13

*United States v. Doe*,
962 F.3d 139 (4th Cir. 2020) ...........................................................5, 28

*United States v. Higgs*,
353 F.3d 281 (4th Cir. 2003) .........................................................6, 7, 8

*United States v. Higgs*,
543 U.S. 999 (2004).........................................................................6, 8

*United States v. Higgs*,
95 F. App'x 37 (4th Cir. 2004) ...............................................................8

*United States v. Higgs*,
543 U.S. 1004 (2004)..............................................................................8

*United States v. Higgs*,
711 F. Supp. 2d 479 (D. Md. 2010)........................................................8

*United States v. Higgs*,
663 F.3d 726 (4th Cir. 2011) ..................................................................8

*United States v. Higgs*,
568 U.S. 1069 (2012)..............................................................................8

*United States v. Higgs*,
193 F. Supp. 3d 495 (D. Md. 2016).........................................................9

*United States v. Sampson*,
300 F. Supp. 2d 278, 280 (D. Mass. 2004) ..........................................17

*United States v. Tipton*,
90 F.3d 861 (4th Cir. 1996) .............................................................17, 20

*United States v. Tuck Chong*,
   123 F. Supp. 2d 563 (D. Haw. 1999)......................................................17

*United States v. Wilson*,
   503 U.S. 329 (1992)..........................................................................19

*Wilborn v. Mansukhani*,
   795 Fed. Appx. 157 (4th Cir. 2019)....................................................26

## FEDERAL STATUTES

18 U.S.C. § 924(c) ...............................................................................7

18 U.S.C. § 1111 ..................................................................................7

18 U.S.C. § 1201 ..................................................................................7

18 U.S.C. § 3582 ............................................................................24, 25

18 U.S.C. §§ 3591-3599 ...............................................................7, 23, 26

18 U.S.C. § 3596 .........................................................................*passim*

18 U.S.C. § 3621 ................................................................................26

28 U.S.C. § 1291 .........................................................................*passim*

28 U.S.C. § 1651 ......................................................................5, 27, 30

28 U.S.C. § 2255 ..................................................................................8

## STATE STATUTES

Md. Code, Article 27, § 413 ....................................................................8

Md. Code, Article 27, § 627 ....................................................................8

**OTHER**

Act of June 19, 1937 ................................................................15

Crimes Act of 1790, 1 Stat. 112................................................15

## INTRODUCTION

Twenty years ago, a federal jury in the District of Maryland found defendant Dustin John Higgs guilty of the kidnapping and murder of three innocent women on federal land beside the Baltimore-Washington Parkway. The jury recommended and the district court imposed nine death sentences for Higgs's crimes, making his case one of the most significant federal capital prosecutions in recent history. Higgs's convictions and death sentences withstood close scrutiny from this Court and others on direct appeal and multiple motions for collateral relief. After further careful review, including consultation with the victims' families, the United States scheduled Higgs's execution to occur on January 15, 2021—nearly 24 years after his crimes.

Earlier this week, however, the district court impeded the execution on an unexpected and unprecedented ground. The court held that Maryland's repeal of its *state* death penalty in 2013 meant that the United States could no longer carry out Higgs's *federal* death sentence, because the Federal Death Penalty Act of 1994 (FDPA) generally provides that federal death sentences must be implemented "in the manner prescribed by the law of the State in which the sentence is imposed." 18 U.S.C. § 3596(a). As the government pointed out, however, the FDPA anticipated and avoided this precise problem, by providing that "[i]f the law of th[at] State does not provide for implementation of a sentence of death, the court shall designate

1

another State, the law of which does provide for the implementation of a sentence of death, and the sentence shall be implemented in the latter State in the manner prescribed by such law." 18 U.S.C. § 3596(a).

The district court agreed that a straightforward application of that provision would warrant designation of Indiana—the site of the federal execution chamber and the federal death row, where Higgs has been housed for the past 20 years—to supply the law governing implementation of Higgs's sentence. But the court declined to take that logical step because it concluded that the FDPA's "designated state" provision can only be invoked at the time the defendant is sentenced. Because Maryland law provided for the death penalty when Higgs was sentenced, the court had no reason to designate an alternative state at that time, and—having failed to do so then—the court understood its hands to be forever tied because Higgs's sentence is now final. Thus, in the court's view, Maryland's 2013 repeal of its state death penalty commuted Higgs's federal death sentence to life imprisonment, even though no one (including the State, the federal government, the court, or Higgs) suggested any such thing at the time.

That result is irreconcilable with the text, structure, history, and purpose of the FDPA, as well as core principles of federal supremacy. Simply put, Congress would not and did not adopt a statute that gives States unilateral veto power over the execution of federal prisoners for federal crimes—a core aspect of federal

2

sovereignty. Nothing in the FDPA so much as hints at the illogical loophole the district court perceived, whereby a State's post-sentencing repeal of its own death penalty (unlike a pre-sentencing repeal) nullifies previously imposed federal death sentences. To the contrary, the FDPA is expressly written to *avoid* the problem of a State that "does not provide for implementation of a sentence of death" by directing the federal court to "designate another State, the law of which does provide for the implementation of a sentence of death." 18 U.S.C. § 3596(a). And the FDPA makes clear that such a designation "shall" be made "[w]hen the sentence is to be implemented," not exclusively when it is imposed. *Id.*

The district court appeared to recognize the severe flaws in its reading, acknowledging that its holding would produce the "absurd" result that Higgs—and other federal capital defendants sentenced in States that have since repealed their death penalties—would receive a "windfall" that Congress did not authorize in the FDPA. JA 164-65. But the court insisted that designating a new state now would constitute an impermissible modification of Higgs's criminal judgment. Aside from its inconsistency with the FDPA (which alone is enough to support appellate relief), that conclusion is doubly wrong on its own terms. As an initial matter, the criminal judgment indicated that the court was imposing sentence "pursuant to . . . Section 3596," JA 53, without naming Maryland or any other state whose law would be used in carrying out that sentence. Far from modifying the judgment, therefore,

3

designating Indiana law today pursuant to a proper reading of Section 3596 is simply carrying out a step the judgment already contemplated. Moreover, even if the judgment *had* called for implementation of the sentence under Maryland law, designating a new state now that Maryland has repealed the death penalty would not constitute a prohibited modification of the sentence itself, but rather a permissible— indeed, statutorily mandated—modification of the means by which the sentence is implemented.

Given the imminent January 15 execution date, this Court should expedite proceedings and direct the district court to designate Indiana pursuant to the FDPA. A direct appeal of the denial of the government's post-judgment motion is available under 28 U.S.C. § 1291, and expedited appellate relief would be appropriate, as other courts of appeals have provided in recent execution-related litigation. Insofar as the Court believes that treating this appeal as a petition for a writ of mandamus is necessary to enable expeditious resolution, that step would be appropriate as well: The government has a clear and indisputable right to relief; there are no other adequate means to relief (if the Court determines that an expeditious appeal would not be possible); and delaying a decision would raise serious separation-of-powers concerns by frustrating the Executive Branch's "legitimate interest in carrying out a sentence of death in a timely manner." *Baze v. Rees*, 553 U.S. 35, 61 (2008). Indeed, the district court seemed to invite a "higher court" to "dispel[]" its misimpression of

4

its limited authority, stating that the execution should otherwise "go forward" under the law of Indiana given that "Higgs's crimes were an abomination, his central responsibility is indisputable, and he had a fair trial on both in terms of guilt and the applicability of the death penalty before a jury of his peers."  JA 165.  This Court should accept that invitation and direct the district court to designate Indiana pursuant to the FDPA as soon as possible and no later than January 15.

## JURISDICTIONAL STATEMENT

This Court has jurisdiction to review the district court's order on the government's post-judgment motion because it is a final decision for purposes of 28 U.S.C. § 1291.  *See United States v. Doe*, 962 F.3d 139, 143-44 (4th Cir. 2020); Section II.A, *infra*.  In the alternative, this Court has jurisdiction to issue a writ of mandamus to the district court pursuant to 28 U.S.C. § 1651(a).  *See Doe*, 962 F.3d at 144; Section II.B, *infra*.

## STATEMENT OF THE ISSUE

Whether the district court committed reversible error by holding that it lacked authority under 18 U.S.C. § 3596(a) to designate Indiana as the State whose law shall govern the implementation of Higgs's capital sentence in light of Maryland's post-sentencing repeal of its own death-penalty law.

## STATEMENT OF THE CASE

### A. The Murders on Federal Land

Early in the morning of January 27, 1996, Dustin Higgs and his co-conspirator murdered Tanji Jackson, Tamika Black, and Mishann Chinn in cold blood just off the Baltimore-Washington Parkway. *United States v. Higgs*, 353 F.3d 281, 289 (4th Cir. 2003), *cert. denied*, 543 U.S. 999 (2004). Higgs had organized a triple date with the three women the previous evening at his apartment in Maryland, but after one of the women got into an argument with Higgs, the women left on foot. *Id.* at 289-90. Higgs became angry, grabbed his .38 caliber firearm, and beckoned the other two men to join him in his van to drive after the women. *Id.* at 290. Higgs caught up to the women, who were persuaded to get into the van and believed they were being driven home. *Id.* Instead, Higgs drove to the Patuxent National Wildlife Refuge and instructed the women to get out of the van. *Id.* Higgs then pulled out his pistol and handed it to his co-conspirator, who shot the three women dead. *Id.*

### B. Capital Conviction and Sentence

Because the murders were committed on federal land, they were federal crimes. Higgs was charged in 1998 by a federal grand jury in the District of Maryland with three counts each of first-degree premediated murder, first-degree murder committed in perpetration of a kidnapping, and kidnapping resulting in

death.  *See* 18 U.S.C. §§ 1111(a), 1201(a)(2); *Higgs*, 353 F.3d at 289, 294; JA 37-51.

Under the supervision of then-Attorney General Janet Reno, the United States sought the death penalty against Higgs on the murder and kidnapping counts.  *Higgs*, 353 F.3d at 294.  Following extensive trial and penalty proceedings, a federal jury in the District of Maryland found Higgs guilty on all counts and recommended nine sentences of death.  *Id.* at 294-95.  In keeping with the jury's recommendation, the district court imposed nine death sentences.  *Id.* at 295.[1]

## C. Imposition of Judgment

The Judgment and Order entered by the district court set forth procedures for carrying out Higgs's death sentence.  For example, it provided that "[t]he sentence shall be executed by intravenous injection of a lethal substance or substances in a quantity sufficient to cause death" and "shall be executed on a date and at a place designated by the Director of the Federal Bureau of Prisons."  JA 54.  It further stated that the capital sentence was "also imposed pursuant to" the Federal Death Penalty Act (FDPA), 18 U.S.C. §§ 3591-3597, "including particularly Sections 3594 and 3596."  JA 53.  Section 3596(a) provides in relevant part that, "[w]hen [a federal capital] sentence is to be implemented," it shall be implemented "in the manner

---

[1] The district court also imposed an aggregate, consecutive 45-year sentence for three convictions under 18 U.S.C. § 924(c).  *Higgs*, 353 F.3d at 295.

prescribed by the law of the State in which the sentence is imposed," unless "the law of the State does not provide for implementation of a sentence of death," in which case "the court shall designate another State, the law of which does provide for the implementation of a sentence of death," and "the sentence shall be implemented in the latter State in the manner prescribed by such law."  18 U.S.C. § 3596(a).

At the time the district court entered the Judgment and Order, the State of Maryland provided for the death penalty.  *See* Md. Code, Art. 27, §§ 413, 627 (2001).  The court therefore had no occasion to address the provision of Section 3596(a) that applies when "the law of the State does not provide for implementation of a sentence of death."  18 U.S.C. § 3596(a).

### D. Direct Appeal and First Motion for Collateral Review

This Court affirmed Higgs's convictions and sentences, and the Supreme Court denied certiorari.  *Higgs*, 353 F.3d at 334; *see* 543 U.S. 999.  The district court also denied Higgs's request for a new trial, this Court affirmed that denial, and the Supreme Court denied review.  *United States v. Higgs*, 95 F. App'x 37 (4th Cir. 2004), *cert. denied*, 543 U.S. 1004 (2004).  Higgs subsequently sought collateral relief under 28 U.S.C. § 2255.  The district court denied his motion, this Court affirmed the denial, and the Supreme Court denied review.  *Higgs v. United States*, 711 F. Supp. 2d 479 (D. Md. 2010), *aff'd*, 663 F.3d 726 (4th Cir. 2011), *cert. denied*, 568 U.S. 1069 (2012).

### E. Maryland's Repeal of Its Death Penalty

In 2013, the Maryland legislature prospectively repealed its death-penalty statute, meaning that state prosecutors could no longer seek capital sentences for state crimes. *See, e.g., Bellard v. State*, 157 A.3d 272, 274, 276 (Md. 2017). Maryland death-row inmates who had previously received capital sentences were not affected by the repeal, but the Governor of Maryland subsequently commuted their capital sentences. *See, e.g., Evans v. State*, 2016 WL 7589914, at *1 (Md. Ct. Spec. App. Dec. 27, 2016).

### F. Other Relevant Proceedings

For years after Maryland's repeal of its state death penalty, Higgs continued to contest his convictions and death sentences in successive post-conviction proceedings without contending that Maryland's action had any effect on his federal death sentences. *See, e.g., United States v. Higgs*, 193 F. Supp. 3d 495 (D. Md. 2016); *see also* Order Denying Petition for a Writ of Habeas Corpus, *Higgs v. Daniels*, No. 16-cv-321 (S.D. Ind. Apr. 30, 2020), *appeal pending*, *Higgs v. Watson*, No. 20-2129 (7th Cir. filed June 29, 2020).

In July 2019, the United States announced that it had adopted a new lethal-injection protocol and would resume implementing federal capital sentences. *See In re Fed. Bureau of Prisons' Execution Protocol Cases*, 955 F.3d 106, 110-111 (D.C. Cir.) ("*Execution Protocol Cases*"), *cert. denied*, 141 S. Ct. 180 (2020). The federal

government has since carried out 10 such sentences, with the Supreme Court repeatedly vacating last-minute orders that would have halted the executions. *See, e.g., Barr v. Hall*, No. 20A102, 2020 WL 6797719 (U.S. Nov. 19, 2020); *Barr v. Lee*, 140 S. Ct. 2590 (2020).

### G. Proceedings Below

After the first of the recent federal executions occurred in July 2020, the federal government in early August 2020 filed a motion in the district court indicating that Maryland law did "not provide for implementation of a sentence of death," and that the FDPA accordingly required the court to "designate another State, the law of which does provide for the implementation of a sentence of death," where "the sentence shall be implemented . . . in the manner prescribed by such law." 18 U.S.C. § 3596(a); *see* JA 60. The government specifically requested that the district court designate Indiana, where Higgs has been incarcerated for nearly 20 years and where the government has carried out all federal executions by lethal injection since 2001. *Id.* After that motion had been fully briefed for roughly two months, the government scheduled Higgs's execution for January 15, 2021. JA at 103, 152.

On December 29, 2020, the district court denied the government's motion. The court held that it lacked "authority to amend or supplement its original judgment to designate a new state for Higgs's execution," concluding that a court can designate an alternative state *only* at the time of sentencing. JA 158-62, 167. The court

acknowledged that allowing a *federal* death sentence to be nullified by the repeal of a *state* death penalty would be an "absurd" result that delivered a "windfall" for Higgs and similarly situated federal capital defendants. *See* JA 163-64. The court stated, however, that it could not avoid that result until "a higher court dispels [its] concern that it lacks authority to act." JA 165.

The next day, the government timely filed a Notice of Appeal, JA 168, and it filed this brief the following day.

## SUMMARY OF ARGUMENT

**I.**     The FDPA's plain text dictates what the district court was compelled to do in this case. Because the law of Maryland "does not provide for implementation of a sentence of death," Section 3596(a) requires that the "court shall designate another State, the law of which does provide for the implementation of a sentence of death, and the sentence shall be implemented in th[at] State in the manner prescribed by [its] law." 18 U.S.C. § 3596(a). Contrary to the district court's reasoning, nothing in the FDPA suggests that an alternative state can be designated only when the sentence is imposed. Just the opposite, Section 3596(a) refers expressly to the time "[w]hen the sentence is to be implemented." *Id.* And as the district court acknowledged, its conclusion that a State can effectively commute a federal death sentence produces the "absurd" result of a "windfall" for a capital defendant that Congress could not possibly have required under the FDPA. JA 164-65.

11

Under that proper understanding of Section 3596(a), there is no basis for the district court's conclusion that designating Indiana law for the implementation of Higgs's execution would constitute an impermissible modification of Higgs's criminal judgment. Doing what Section 3596(a) requires would be entirely consistent with the criminal judgment, which expressly refers to the procedures required by Section 3596(a) but does not itself designate any particular State's laws. Moreover, because Section 3596(a) specifically mandates the designation of an alternative State, it would control even if there were any conflict with the general rules against modifying criminal judgments. And in all events, there is no such conflict, because the designation changes only the FDPA-incorporated state law governing the manner in which the sentence will be implemented, not the sentence itself.

**II.** This Court can and should expeditiously overrule the district court's erroneous refusal to designate Indiana under the FDPA. Appellate jurisdiction exists under 28 U.S.C. § 1291 over the district court's final decision on the government's post-judgment motion. And insofar as the Court were to conclude that treating this appeal as a petition for a writ of mandamus is the only means by which to provide sufficiently expeditious relief, the Court could follow that path as well, as the government satisfies all of the requirements for mandamus here.

**STANDARD OF REVIEW**

This Court reviews question of law, including the interpretation of criminal statutes, de novo. *See United States v. Chacon*, 533 F.3d 250, 253 (4th Cir. 2008). The mandamus standard is set forth below. *See* Section II.B.

**ARGUMENT**

**I. THE DISTRICT COURT ERRED IN REFUSING TO DESIGNATE ANOTHER STATE FOR IMPLEMENTATION OF HIGGS'S FEDERAL DEATH SENTENCE**

Higgs was sentenced to death for federal crimes by a federal court under the FDPA. The United States is now prepared to implement his sentence. The text of the FDPA prescribes how that process should unfold:

> When the sentence is to be implemented, the Attorney General shall release the person sentenced to death to the custody of a United States marshal, who shall supervise implementation of the sentence in the manner prescribed by the law of the State in which the sentence is imposed. If the law of the State does not provide for implementation of a sentence of death, the court shall designate another State, the law of which does provide for the implementation of a sentence of death, and the sentence shall be implemented in the latter State in the manner prescribed by such law.

18 U.S.C. § 3596(a).

The FDPA's application to this case is straightforward. The "State in which" Higgs's "sentence [wa]s imposed" is Maryland. 18 U.S.C. § 3596(a). But now, "[w]hen the sentence is to be implemented," the law of Maryland "does not provide for implementation of a sentence of death," given that the State repealed its death

13

penalty in 2013. *Id.* The FDPA therefore mandates that the district "court *shall* designate another State, the law of which does provide for the implementation of a sentence of death, and the sentence shall be implemented in th[at] State in the manner prescribed by [its] law." *Id.* (emphasis added).

The district court appeared ready to follow that statutory mandate by designating Indiana—the site of the federal death row, where Higgs has been housed for the past two decades. *See* JA 165. But the court viewed itself as lacking authority to make such a designation given that it had not done so when it imposed Higgs's death sentence in 2001, while Maryland still provided for the death penalty. *See* JA 164. Under the court's reading, the FDPA allows a court to designate an alternative State *only* at the time of a capital defendant's sentencing, even if the State within which the federal sentence was imposed later changes its laws and "does not provide for implementation of a sentence of death" at the time of execution. 18 U.S.C. § 3596(a).

That interpretation cannot be reconciled with the text, structure, history, or purpose of the FDPA. In essence, the district court read the FDPA to create the very problem Congress wrote the statute to solve—a federal capital sentence imposed in a State that does not provide a manner for implementing death sentences. The court's bottom-line position is thus that *States* can retroactively vacate *federal* death sentences. That turns principles of federal supremacy on their head, and no canon

14

of statutory interpretation—nor any decision of any court—supports reading the FDPA in such a counterintuitive and self-defeating way. Indeed, the district court seemed to acknowledge that its reading produced the "absurd" result that Higgs and similarly situated capital defendants would receive a "windfall" Congress did not intend. JA 164 (quotation marks omitted). The court was right about that much. This Court should confirm—as the district court invited it to do, *see* JA 165—that the district court erred in refusing to designate Indiana as the alternative State whose law will prescribe the manner of implementing Higgs's January 15 execution.

> ### A. The FDPA Required the District Court To Designate an Alternative State for Implementation of Higgs's Federal Death Sentence

**1.** The critical text of Section 3596(a) has its roots in two prior federal death penalty statutes. In the Crimes Act of 1790, 1 Stat. 112, the First Congress made the death penalty available for certain federal crimes and provided that "the manner of inflicting the punishment of death[] shall be by hanging the person convicted by the neck until dead." § 33, 1 Stat. 119; *see, e.g.*, *Bucklew v. Precythe*, 139 S. Ct. 1112, 1122-23 (2019). In 1937, Congress moved from a single prescribed federal method of execution (hanging) to the "manner of inflicting the punishment of death . . . prescribed by the laws of the State within which the sentence is imposed." Act of June 19, 1937 (1937 Act), ch. 367, 50 Stat. 304; *see Andres v. United States*, 333 U.S. 740, 745 n.6 (1948) (describing the background of the 1937 Act).

The 1937 Act's "adoption of the local mode of execution" had an advantage: It allowed the federal government to employ "the more humane methods of execution, such as electrocution, or gas" that were being adopted by States. *Andres*, 333 U.S. at 745 n.6 (citation omitted). But it also created a potential problem. Some States did not provide for the death penalty. S*ee, e.g.*, Death Penalty Information Center, *States With and Without the Death Penalty—2020*, https://deathpenaltyinfo.org/state-and-federal-info/state-by-state (noting that States including Maine, Minnesota, and Wisconsin had repealed their death penalties long before 1937). Congress addressed that possible loophole by adding a fallback provision to the 1937 Act: "If the laws of the State within which sentence is imposed make no provision for the infliction of the penalty of death, then the court shall designate some other State in which such sentence shall be executed in the manner prescribed by the laws thereof." 50 Stat. 304. In 1994, Congress carried forward the 1937 Act's implementation provisions without substantial amendment in the FDPA. *See* 18 U.S.C. § 3596(a); *Execution Protocol Cases*, 955 F.3d at 110.

There has never been any doubt, under either the 1937 Act or the FDPA, about the fallback provision's role in the statutory scheme. Every judge that has ever interpreted those statutes has recognized that it is "specifically designed to prevent the choices of an individual state from effectively nullifying the federal death penalty." *Execution Protocol Cases*, 955 F.3d at 120 (Katsas, J., concurring); *see*

16

*id.* at 142 (Rao, J., concurring) (indicating that the provision applies "whenever the sentencing state does not provide for the death penalty"); *id.* at 145 (Tatel, J., dissenting) (indicating that the provision applies when the state where sentencing occurred "has no death penalty"); *see also United States v. Tipton*, 90 F.3d 861, 902 (4th Cir. 1996) (explaining that the 1937 Act "provided that with respect to death sentences . . . the means of execution should be that 'prescribed by the laws of the place within which the sentence is imposed,' or, failing such laws, as prescribed by the law of another state designated by the sentencing court"). In short, the provision "clearly contemplates that the federal death penalty might be applied anywhere in the nation, although [some] of the states do not authorize capital punishment." *United States v. Tuck Chong*, 123 F. Supp. 2d 563, 568 (D. Haw. 1999).

Delegating an alternative State, moreover, is not optional; the FDPA commands that a district court "shall" do so if the statutory conditions are met. 18 U.S.C. § 3596(a); *see United States v. Sampson*, 300 F. Supp. 2d 278, 280 (D. Mass. 2004) ("The express terms of the statute unambiguously provide that where . . . the law of the state in which a federal death sentence has been imposed does not authorize death as a penalty for any crime, the court has the authority and responsibility to designate another state, whose law does include the death penalty, as the place for the defendant's execution.").

Likewise, in interpreting the fallback provision of the FDPA and its predecessor statute, no court (until the decision below) ever suggested that a sentencing court may designate an alternative State *only* at the time the death sentence is imposed. That is unsurprising for multiple reasons.

To begin, nothing in the text of Section 3596(a) states or implies such a limitation. To the contrary, Congress enacted a separate provision of the FDPA— 18 U.S.C. § 3594—that governs "[i]mposition of a sentence of death." Section 3596, by contrast, governs "[i]mplementation of a sentence of death." And the temporal terms in Section 3596(a) reinforce that the alternative-designation provision remains available post-sentencing. The first sentence of Section 3596(a) states that a "person who *has been* sentenced to death pursuant to this chapter shall be committed to the custody of the Attorney General *until exhaustion of the procedures for appeal of the judgment of conviction and for review of the sentence*"—a period that typically lasts many years. 18 U.S.C. § 3596(a) (emphasis added). The second sentence begins, "*When the sentence is to be implemented*," and provides that the death sentence generally shall be implemented "in the manner prescribed by the law of the State in which the sentence is imposed"—unless, as the third sentence provides, "the law of the State does not provide for implementation of a sentence of death." *Id.* (emphasis added). In that circumstance, "the court shall designate another State, the law of which *does provide* for the implementation of a sentence of death, and the sentence

18

*shall be implemented* in the latter State in the manner prescribed by such law." *Id.* (emphasis added). The unmistakable temporal flow and present-tense verbs in Section 3596(a) leave no room for a reading that the fallback provision can be invoked only at the time the death sentence is imposed. *See, e.g.*, *United States v. Wilson*, 503 U.S. 329, 333 (1992) ("Congress' use of a verb tense is significant in construing statutes.").[2]

In addition, reading Section 3596(a) to require designation of an alternative State at the time the sentence is imposed would directly contradict the purpose of the statute. By allowing the absence of a state death penalty to block implementation of a federal death sentence imposed in that State, such a now-or-never reading perversely creates the exact problem Congress adopted the fallback provision to solve. *See, e.g.*, *Execution Protocol Cases*, 955 F.3d at 120-21 (Katsas, J., concurring). The Supreme Court, however, has refused to interpret the FDPA and its predecessor to create such a gap or "hiatus." *Andres*, 333 U.S. at 745 n.6 (reading the 1937 Act's reference to the "State" laws to include laws of a federal territory to

---

[2] To be sure, a district court *may* designate an alternative State at the time it imposes a death sentence as a way to provide maximum clarity about which state law will ultimately govern implementation of that sentence. *See* JA 162-63 (citing district courts that have made such designations). That approach is logical when the State in which the sentence is imposed has *already* repealed its death penalty, thereby making clear that an alternative State must be designated at some point before implementation of the sentence. *See id.* But nothing in the FDPA suggests that a sentencing court *must* designate an alternative State at the time the sentence is imposed or forever relinquish its ability to do so.

avoid creating a gap in the Act's coverage).  Indeed, three Justices last December cautioned against reading the FDPA in a related context in a way that "could well make it impossible to carry out executions of prisoners sentenced in some States." *Barr v. Roane*, 140 S. Ct. 353, 353 (2019) (statement of Alito, J., joined by Gorsuch and Kavanaugh, JJ.); *see Tipton*, 90 F.3d at 901-02 (this Court refusing to interpret federal death penalty statutes to eliminate any mechanism for implementing the federal death penalty); *cf. Baze*, 553 U.S. at 47 (plurality opinion) (explaining that, because capital punishment is lawful, it "necessarily follows that there must be a means of carrying it out").

**2.**  Notwithstanding those strong contrary indications, the district court determined that the FDPA allows designation of an alternative State exclusively at the time of sentencing.  JA 162-63.  The court's interpretation rests on a single *ipse dixit* assertion.  After acknowledging the government's argument that "the temporal phrase at the beginning of the second sentence extends to the third sentence" of Section 3596(a), the court stated that "the third sentence could just as easily be read in relation to the last phrase of the second sentence, which refers to the original imposition of the sentence (i.e., 'in the manner prescribed by the law of the State in which the sentence is imposed')."  JA 162.  As explained above, however, the FDPA cannot "just as easily be read" that way.  Such a reading interrupts the logical and temporal flow of the section, which centers on implementation rather than

imposition of the sentence. And whatever ambiguity might conceivably arise from the use of the term "sentence is imposed" at the end of the second sentence, it is removed by the unambiguous use of the phrase "[w]hen the sentence is to be implemented" at the beginning of that sentence. 18 U.S.C. § 3596(a).

Moreover, even if the FDPA could "just as easily be read" either way, the proper resolution would be to pick the reading that *avoids rather than creates* what even the district court itself conceded were "absurd" results. JA 164-65; *see, e.g., Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 217-18 (2002) (explaining that it is a court's "job to avoid rendering what Congress has plainly done . . . devoid of reason and effect"); *Griffin v. Oceanic Contractors, Inc.*, 458 U.S. 564, 575 (1982) ("[I]nterpretations of a statute which would produce absurd results are to be avoided if alternative interpretations consistent with the legislative purpose are available."). That is especially true here given the host of implausible anomalies that follow from the district court's interpretation.

To begin, as noted above, it would mean that the Maryland legislature effectively repealed previously imposed federal death sentences, even though no one has ever suggested that Congress ceded authority over federal death sentences to state legislatures in that way—and even though Maryland's death-penalty repeal was not retroactive *even as to its own state prisoners*. *See* p. 9, *supra*. The disruption wrought by the district court's position would not be confined to Higgs's sentence.

21

As the court acknowledged, a similar windfall would be provided to another federal death-row inmate sentenced in Maryland before 2013, and a federal death-row inmate sentenced in Illinois before that State repealed its death penalty, if the courts that sentenced those inmates were to adopt the same FDPA interpretation after those inmates have exhausted their direct and post-conviction review of their death sentences. JA 163. And the list could go on. Federal death-row inmates were sentenced in States including California and Pennsylvania, where a future state death-penalty repeal is particularly plausible, given that their Governors have already declared moratoria on the death penalty. *See Execution Protocol Cases*, 955 F.3d at 120 (Katsas, J., concurring).

The implausibility of the district court's interpretation is further underscored by Higgs's own litigation conduct. Although Maryland repealed its state death penalty in 2013, Higgs did not suggest until this summer that his federal capital sentence could not be implemented. Quite the opposite, he continued to litigate the validity of his convictions and sentences in multiple courts—actions that would be *counterproductive* if he actually embraced the district court's rationale, because a vacatur of his current death sentence followed by a retrial and imposition of a new capital sentence with Indiana designated as the alternative State for implementation would leave him *worse off* than he claims he is now. All of that further highlights

22

what the district court itself acknowledged—its reading of the FDPA is "absurd" and irreconcilable with the statute Congress enacted.  JA 164-65.

**B.    Designation of an Alternative State as Required by the FDPA Is Not an Impermissible Modification of the Sentence**

Based on its erroneous conclusion that the FDPA always requires designation at the time of sentencing, the district court concluded that designating "another State" now would constitute an impermissible modification of a criminal sentence because: (1) the criminal judgment designated Maryland "by implication," and (2) the means by which a sentence is to be implemented is an unmodifiable component of a criminal sentence.  Dkt. No. 657 at 7-9, 12-13.  Both of those propositions were necessary to its decision; neither one is correct.

**1.**  As an initial matter, designating Indiana as the State whose law is to be used in implementing the sentence would not constitute a modification of the criminal judgment in any way, because the judgment generically references the FDPA, which, as discussed, allows for designation of an alternative State at the time when the sentence is to be implemented.  In particular, the judgment provided only that the "sentence as to [the capital convictions] is also imposed pursuant to [18 U.S.C. §§ 3591-97], including particularly Sections 3594 and *3596*."  JA 53 (emphasis added).  Nothing in that judgment specifically dictated that the sentence be implemented according to the laws of Maryland even if Maryland later repealed its death penalty.  And the district court's conclusion that the judgment so required

23

"by implication," JA 161, depends entirely on its erroneous view that an alternative designation under Section 3596 can be made only at the time of the original sentencing (when an alternative designation would not have been proper given that Maryland law provided for the death penalty). Accordingly, designating Indiana now would simply be giving effect to the 2001 judgment's explicit reference to the procedures contemplated in Section 3596.

**2.** Moreover, the result would be no different even if the criminal judgment had specifically identified Maryland as the State in which sentence was imposed and the death-penalty laws of which would prescribe the manner of implementing Higgs's execution (as sometimes occurs, *see* JA 163-64). The district court would not be precluded from designating an alternative State after the State in which sentence was imposed has repealed its death penalty, because that still would not constitute an impermissible modification of the criminal judgment.

To be clear, the district court is correct that Congress has provided that criminal judgments generally cannot be modified by the sentencing court once they have been imposed. *See Dillon v. United States*, 560 U.S. 817, 824 (2010) (A "'judgment of conviction that includes [a sentence of imprisonment] constitutes a final judgment' and may not be modified by a district court except in limited circumstances.") (quoting 18 U.S.C. § 3582(b)) (brackets in original). But that

24

general rule has no application to designations under Section 3596(a) for two reasons.

First, as discussed above, Section 3596(a) itself unambiguously directs that the district court "shall designate" an alternative State "[i]f the law of the State [in which the sentence is imposed] does not provide for implementation of a sentence of death" at the time "[w]hen the sentence is to be implemented." 18 U.S.C. § 3596(a). That specific authorization would take precedence over any contrary general rule against modification of criminal judgments. *Cf. Radzanower v. Touche Ross & Co.*, 426 U.S. 148, 153 (1976) ("[A] specific statute will not be controlled or nullified by a general one.") (citation omitted).

Second, designation under Section 3596(a) would not modify the criminal judgment at all because it only modifies the means by which the sentence is to be implemented. Indeed, the title of Section 3596 is "Implementation of a sentence of death," and the text of Section 3596(a) uses a form of the word "implement" five separate times. And the designation of a new State is properly understood that way. In the context of imprisonment, for example, the "*term* of imprisonment" is part of the sentence and generally cannot be modified outside of certain defined circumstances, 18 U.S.C. § 3582(c) (emphasis added), but the *place* and *conditions* of imprisonment are not part of the sentence at all. Instead, Congress has provided that the Bureau of Prisons—not the sentencing court—"shall designate the place of

25

the prisoner's imprisonment" after considering numerous factors. *See* 18 U.S.C. § 3621; *see id.* (directing the Bureau to consider the "*recommendations* of the sentencing court") (emphasis added). And thus the Bureau does not impermissibly "modify" the criminal judgment when it exercises its unquestioned authority to, for example, move a prisoner from one correctional facility to another. *See Wilborn v. Mansukhani*, 795 Fed. Appx. 157, 161 (4th Cir. 2019) (discussing Bureau regulations governing "where inmates are housed").

The same is true with capital sentences under the FDPA. The FDPA provides that the applicable sentence is a "sentence of death," the phrase used repeatedly throughout the statute, *see* 18 U.S.C. §§ 3591-3599. A modification of a "sentence of death" would entail changing that sentence so that it is no longer a "sentence of death" but rather a sentence of something else, such as "life imprisonment without possibility of release." *Id.* § 3594. By contrast, what is at issue here is a modification of the "manner" in which "implementation of the sentence" shall occur, *id.* § 3596(a)—the sentence remains a "sentence of death," just carried out in a newly identified way. Accordingly, the district court erred at every level in refusing to designate Indiana under Section 3596(a) as the State whose law shall prescribe the manner of implementing Higgs's execution.

26

## II. THIS COURT HAS JURISDICTION TO RESOLVE THIS CASE EXPEDITIOUSLY

This Court has jurisdiction to consider this appeal pursuant to 28 U.S.C. § 1291, and it should do so expeditiously—as other courts of appeals have properly done in connection with recent execution-related litigation. To the extent the Court has any doubts about resolving the case expeditiously under Section 1291, the government asks in the alternative that the Court grant immediate mandamus relief under 28 U.S.C. § 1651(a) to permit the execution to go forward as scheduled on January 15, 2021. Indeed, the district court suggested that there would be "every reason to permit this execution to go forward" if it had authority to do so, and the court seemed to invite prompt appellate review of its narrow understanding of its authority. JA 165. This Court should provide that review and resolve the case so that the execution can "proceed as planned." *Lee*, 140 S. Ct. at 2592.

### A. This Court Can Resolve The Appeal Expeditiously Under 28 U.S.C. § 1291

The district court's December 29, 2020, Order finally and conclusively resolved the government's post-judgment motion requesting the district court to designate another State under the FDPA. The court denied the motion, recognizing that this would bar the implementation of Higgs's death sentence unless "a higher court dispels the Court's concern that it lacks authority to act." JA 165. As such, the district court's order plainly constitutes "a final, post-judgment order" over

27

which this Court has "§ 1291 jurisdiction" under its precedents. *United States v. Doe*, 962 F.3d 139, 143-44 (4th Cir. 2020); *see id.* (collecting cases showing that post-judgment orders, both civil and criminal, are generally appealable under 28 U.S.C. § 1291).

This Court can and should resolve the appeal expeditiously, as other courts of appeals have done in recent execution-related cases. For example, in *Hall v. Barr*, No. 20-cv-3184, 2020 WL 6743080 (D.D.C. Nov. 16, 2020), the district court issued a decision on November 16, 2020, in advance of an execution scheduled for November 19, 2020, *see id.* at *1; the D.C. Circuit then set an expedited briefing schedule and entered a decision two days later affirming the district court's decision and thereby allowing the execution to proceed the following day, *see Hall v. Barr*, 830 Fed. Appx. 8, 9 (D.C. Cir. 2020) (per curiam). Similarly, in another appeal related to the same execution, the district court entered its decision on November 3, 2020, and 15 days later, the D.C. Circuit entered a full published decision affirming in part and reversing in part, again allowing the execution to proceed. *In re Fed. Bureau of Prisons Execution Protocol Cases*, 980 F.3d 123, 126, 138 (D.C. Cir. 2020). The Supreme Court itself has on four occasions in the past six months reviewed and summarily vacated district court injunctions barring executions in a period of less than 24 hours. *See Lee*, 140 S. Ct. at 2591-2592; *Barr v. Purkey*, 140 S. Ct. 2594 (2020); *Barr v. Purkey*, 141 S. Ct. 196 (2020); *Hall*, 2020 WL 6797719.

28

That expedition reflects, among other things, the government's strong "interest in carrying out a sentence of death in a timely manner." *Baze v. Rees*, 553 U.S. 35, 61 (2008). Especially in light of the straightforward statutory interpretation question this case presents, the government respectfully requests that this Court act with similar dispatch here, by holding, in advance of the scheduled January 15, 2021, execution date, that the district court erred in refusing to designate Indiana under the FDPA as the alternative State whose laws will prescribe the manner of implementing Higgs's execution.

### B. In the Alternative, This Court Could Promptly Issue a Writ of Mandamus

While the district court's order is properly appealable as a final order, if this Court concludes that it is not possible to resolve the appeal with sufficient time to permit the implementation of the death sentence on January 15, 2021, it would be appropriate for this Court to instead proceed under mandamus and order the district court to designate Indiana as the alternative FDPA State. Doing so would reflect the district court's own recognition that Indiana would be the appropriate State of designation if it has the power to act. *See* JA 165 ("If it had clear authority to act, the Court would see no impediment to concluding that Indiana is an appropriate place to carry out the execution[.]"); *see also* JA 163 (citing other cases in which district courts in non-death-penalty states designated Indiana).

A core purpose of the writ of mandamus is to compel a district court to act—including to exercise discretion with which it is vested—when it has "refused 'to exercise its authority when it is its duty to do so.'" *In re Trump*, 958 F.3d 274, 281 (4th Cir. 2020) (en banc) (quoting *Kerr v. U.S. Dist. Ct.*, 426 U.S. 394, 402 (1976)); *see also, e.g.*, *Ex parte Park & Tilford*, 245 U.S. 82, 85 (1917) (noting that mandamus may "be invoked where the purpose is to require action of a court of competent jurisdiction, where such court has refused to exercise the power of decision with which it is invested by law"). And more concretely, mandamus relief under 28 U.S.C. § 1651 is warranted where the moving party has established that (1) its "right to issuance of the writ is clear and indisputable"; (2) "there are no other adequate means of obtaining the relief sought"; and (3) "the writ is appropriate under the circumstances." *Trump*, 958 F.3d at 281 (citing *Cheney v. U.S. Dist. Court*, 542 U.S. 367, 380-81 (2004). Those requirements would be satisfied here if an expedited appeal under Section 1291 were unavailable.

*First*, the government has a "clear and indisputable right" to relief. *Trump*, 958 F.3d at 281. As discussed, the FDPA unambiguously mandates that the district court "shall designate" an alternative State in these circumstances. 18 U.S.C. § 3596(a); *see supra* Part I. The district court's "refus[al]" to exercise its clear "duty" to designate an alternative State is an "extraordinary situation[]" warranting mandamus. *Trump*, 958 F.3d at 281.

*Second*, as to the adequacy of other means of relief, if this Court is able to decide the central question here through its ordinary appellate jurisdiction with time for the government to implement Higgs's sentence on January 15, then the Court should do so. But if it cannot, then there is no adequate alternative means to obtain effective relief. The Supreme Court has repeatedly emphasized that "[b]oth the [government] and the victims of crime have an important interest in the timely enforcement of a [death] sentence." *Bucklew*, 139 S. Ct. at 1133; *see also Baze*, 553 U.S. at 61. Here, the government requested the designation of the State of Indiana on August 4, 2020, Dkt. No. 640, and the parties finalized briefing on the issue on September 18, Dkt. No. 649. This Court should not permit the "important interest in the timely enforcement of" the sentence, *Bucklew*, 139 S. Ct. at 1133, to be frustrated by the district court's failure to rule on the government's motion until December 29.

*Third*, mandamus relief is manifestly appropriate in this case. "Accepted mandamus standards are broad enough to allow a court of appeals to prevent a lower court from interfering with a coequal branch's ability to discharge its constitutional responsibilities." *Cheney*, 542 U.S. at 382. Congress, through the FDPA, has placed on the Department of Justice the responsibility to carry out a lawful sentence of death, including the designation of the date on which the death sentence will be implemented. The district court's disregard of its obligation under the FDPA to

31

designate another State "interfere[es]" with the Executive Branch's attempt to carry out the sentence created by Congress and upheld by this Court. *Id.* That "unwarranted impairment of another branch in the performance of its constitutional duties" should be remedied, if necessary, through a writ of mandamus. *Cheney*, 542 U.S. at 367.

## CONCLUSION

This Court should direct the district court to designate Indiana pursuant to the FDPA as the State whose laws shall prescribe the manner of implementing Higgs's execution. And it should make clear that its judgment is effective immediately, so that Higgs's execution can proceed as planned on January 15, 2021.

Respectfully submitted,

Robert K. Hur
United States Attorney

Ellen E. Nazmy
Special Assistant United States Attorney
United States Attorney's Office
6500 Cherrywood Lane, Suite 200
Greenbelt, Maryland 20770
(301) 344-4433

/s/
Jeffrey A. Hall
Counsel to the Assistant Attorney General
Civil Division, Department of Justice
950 Pennsylvania Ave. NW
Washington, DC 20530
Tel: (202) 353-8679
Email: jeffrey.a.hall@usdoj.gov

December 31, 2020

## STATEMENT WITH RESPECT TO ORAL ARGUMENT

The United States respectfully suggests that oral argument is not necessary in this case.

# CERTIFICATE OF COMPLIANCE

1.  This brief has been prepared using:

    **Microsoft Word, Times New Roman, 14 Point**

2.  EXCLUSIVE of the table of contents; table of citations; signature block; statement with respect to oral argument; any addendum containing statutes, rules, or regulations; and the certificates of counsel, the brief contains 7,737 words.

    I understand that a material misrepresentation can result in the Court's striking the brief and imposing sanctions.  If the Court so directs, I will provide an electronic version of the brief and/or a copy of the word or line print-out.

/s/ _____
Jeffrey A. Hall
Counsel to the Assistant Attorney General

# CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 31st day of December 2020, I

electronically filed the foregoing with the Clerk of Court using the CM/ECF

System, which will send notice of such filing to the following registered CM/ECF

user:

Leigh M. Skipper
Chief Federal Defender
Matthew Lawry
Assistant Federal Defender
601 Walnut St Ste 545 W.
Philadelphia, PA 19106
215-928-0520

Steven H. Sachs, Esq.
WilmerHale LLP
1875 Pennsylvania Ave.
Washington, DC 20006
(202) 663-6000

/s/
Jeffrey A. Hall
Counsel to the Assistant Attorney General