No. 20-18

_____

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

_____

UNITED STATES OF AMERICA,

*Plaintiff-Appellant*,

v.

DUSTIN JOHN HIGGS,

*Defendant-Appellee*.

_____

On Appeal from the United States District Court
for the District of Maryland

_____

## BRIEF OF APPELLEE

_____

Matthew Lawry
Federal Community Defender Office
   for the Eastern District of Pennsylvania
The Curtis, Suite 545-West
601 Walnut Street
Philadelphia, PA 19106
(215) 928-0520
Matthew_Lawry@fd.org

Stephen H. Sachs
Roland Park Place
830 W. 40th Street, Apt. 864
Baltimore, MD 21211
(410) 243-4589
 stephenhsachs@gmail.com

Counsel for Dustin J. Higgs

January 7, 2021

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .............................................................................. ii

INTRODUCTION ..........................................................................................1

JURISDICTIONAL STATEMENT .................................................................3

STATEMENT OF THE ISSUE......................................................................4

STATEMENT OF THE CASE.......................................................................4

    A.    Trial and Sentencing.................................................................4

    B.    Direct Appeal and Post-Conviction Proceedings.................................7

    C.    The Government's Motion to Amend the Judgment ...........................9

SUMMARY OF THE ARGUMENT .............................................................13

STANDARD OF REVIEW ..........................................................................14

ARGUMENT................................................................................................14

I.    THE DISTRICT COURT CORRECTLY DETERMINED THAT IT LACKED AUTHORITY TO DESIGNATE A STATE TO IMPLEMENT MR. HIGGS'S DEATH SENTENCE.................................................................................14

    A.    Mr. Higgs's Judgment Cannot Be Modified. .....................................15

    B.    The Government Is Wrong About What the FDPA Requires in Any Event. ...........................................................................................24

II.    THE GOVERNMENT'S ALTERNATIVE REQUEST FOR MANDAMUS IS MERITLESS AND PROCEDURALLY IMPROPER. ................................29

CONCLUSION............................................................................................34

REQUEST FOR ORAL ARGUMENT .................................................................35

# TABLE OF AUTHORITIES

**Federal Cases**

*Berman v. United States*, 302 U.S. 211 (1937) ................................................ 21, 22

*Burton v. Stewart*, 549 U.S. 147 (2007) .......................................................... 22, 23

*Cheney v. U.S. Dist. Court*, 542 U.S. 367 (2004) ................................................ 33

*Dillon v. United States*, 560 U.S. 817 (2010) ...................................................... 15

*Higgs v. United States*, 138 S. Ct. 2572 (2018) .................................................... 8

*Higgs v. United States*, 542 U.S. 999 (2004) ........................................................ 7

*Higgs v. United States*, 543 U.S. 1004 (2004) ...................................................... 7

*In re Trump*, 958 F.3d 274 (4th Cir. 2020) ................................................ 30, 31, 32

*Johnson v. United States*, 576 U.S. 591 (2015) ..................................................... 8

*Radzanower v. Touche Ross & Co.*, 426 U.S. 148 (1976) .............................. 19, 20

*United States v. Barton*, 26 F.3d 490 (4th Cir. 1994) ........................................... 14

*United States v. Chambers*, 956 F.3d 667 (4th Cir. 2020) .................................... 16

*United States v. Davis*, 139 S. Ct. 2319 (2019) ................................................. 9, 29

*United States v. Fraley*, 988 F.2d 4 (4th Cir. 1993) .............................................. 16

*United States v. Griffin*, 60 F.3d 826 (4th Cir. 1995) ............................................ 16

*United States v. Haynes*, 26 F. App'x 123 (4th Cir. 2001) ..................................... 4

*United States v. Higgs*, 95 F. App'x 37 (4th Cir. 2004) .......................................... 7

*United States v. Higgs*, 193 F. Supp. 3d 495 (D. Md. 2016) .................................. 8

*United States v. Higgs*, 353 F.3d 281 (4th Cir. 2003) ..................................... 4, 5, 7

*United States v. Higgs*, 663 F.3d 726 (4th Cir. 2011) ............................................ 7

*United States v. Higgs*, 711 F. Supp. 2d 479 (D. Md. 2010) ................................. 7

*United States v. Jones*, 238 F.3d 271 (4th Cir. 2001) ........................................... 18

*United States v. Lightner*, 266 F. App'x 240 (4th Cir. 2008) ............................... 21

*United States v. McVeigh*, 106 F.3d 325 (10th Cir. 1997) .............................. 31, 33

*United States v. Moussaoui*, 333 F.3d 509 (4th Cir. 2003) ............................. 29, 30

*United States v. Moussaoui*, 483 F.3d 220 (4th Cir. 2007) .................................. 33

*United States v. Mouzone*, 687 F.3d 207 (4th Cir. 2012) ..................................... 14

*United States v. Roberts*, 88 F.3d 872 (10th Cir. 1996) ........................................ 30

ii

*United States v. Sampson*, 300 F. Supp. 2d 278 (D. Mass. 2004) ......................... 28

*United States v. Wilson*, 503 U.S. 329 (1992) ................................. 25, 26

*Will v. United States*, 389 U.S. 90 (1967) ....................................... 30, 31

**Federal Statutes**

18 U.S.C. § 3582 ....................................................................... 17, 20

18 U.S.C. § 3585 ............................................................................ 26

18 U.S.C. §§ 3591–3597 ............................................................. 6, 27

18 U.S.C. § 3594 ........................................................................ 6, 27

18 U.S.C. § 3596 ........................................................................ *passim*

18 U.S.C. § 3582 ........................................................... 16, 17, 20, 27

28 U.S.C. § 1291 .............................................................................. 3

28 U.S.C. § 1651 .............................................................................. 3

28 U.S.C. § 2241 .............................................................................. 8

28 U.S.C. § 2255 ....................................................................... 7, 8, 9

**State Cases**

*Bellard v. State*, 157 A.3d 272 (Md. 2017) ............................................ 9

**Other**

28 C.F.R. §§ 26.1–26.4 ................................................................. 27

28 C.F.R. § 26.2 .............................................................................. 6

Fed. R. Crim. P. 32 .......................................................................... 6

Fed. R. Crim. P. 35 ................................................................ 16, 17, 20

Fed. R. App. P. 28 ........................................................................... 3

Fed. R. Civ. P. 60 ............................................................................ 8

**INTRODUCTION**

Although this is ostensibly an appeal of the district court's denial of the Government's "Motion to Amend Judgment and Order," JA59–60, that fact is difficult to discern from the Government's opening brief. The Government's latest in a series of shifting and contradictory positions bears little resemblance to the argument it first advanced in its motion. *Compare* JA60 ("[T]he purpose of this Motion is to amend the Judgment and Order pursuant to 18 U.S.C. § 3596 to specifically designate the State of Indiana, where the defendant is currently housed, as the state implementing the sentence of death."), *with* Br. of Appellant 23 ("As an initial matter, designating Indiana as the State whose law is to be used in implementing the sentence would not constitute a modification of the criminal judgment in any way.").

The Government's primary contention to this Court is that Federal Death Penalty Act (FDPA) contains some sort of inherent authority for a district court to modify criminal judgments that appears nowhere in the text of that statute. In making this argument, the Government mostly ignores the straightforward and unambiguous prohibition on modifying criminal judgments that permits only limited exceptions not relevant here. While the Government tacks on half-hearted arguments that designating a new state to create authority to carry out Mr. Higgs's

execution where none currently exists does not modify Mr. Higgs's judgment, those arguments are unavailing.

The Government's textual arguments about what the FDPA requires are not only irrelevant in light of the prohibition on modifying criminal judgments, they are incorrect. As the district court correctly found below, the text of 18 U.S.C. § 3596(a), which the Government relies upon as the purported source of authority to designate a new state for purposes of implementing Mr. Higgs's death sentence, is ambiguous at best, *see* JA162, while prior understanding of the statute— including that of the Government itself—is contrary to the Government's current position. Section 3596 certainly does not provide the clarity necessary to overcome the clear prohibition on amending criminal judgments and effectuate the Government's request.

But this Court need not—and indeed cannot—reach the merits of the Government's argument. It lacks jurisdiction to do so. As is evident from the fact that the Government elected to include a six-page preemptive defense of jurisdiction in its opening brief, the Government is well aware of this jurisdictional problem. Its incomplete and procedurally improper efforts to conjure jurisdiction where none exists must fail.

**JURISDICTIONAL STATEMENT**

This is the Government's attempt to appeal a December 29, 2020, opinion and order of the United States District Court for the District of Maryland, denying the Government's motion to amend Appellee Dustin Higgs's judgment of sentence. JA153–66 (opinion); JA167 (order). The Government has also attempted to include a mandamus petition under the same case number, set forth as an alternative form of relief in its opening brief. *See* Br. of Appellant 29–32. The Government filed a notice of appeal on December 30, 2020. JA168–69.

As set forth more fully in Mr. Higgs's motion to dismiss this appeal, this Court lacks jurisdiction to hear the Government's hybrid appeal-mandamus petition. Title 28 U.S.C. § 1291 does not provide an independent basis for appellate jurisdiction over Government appeals in criminal cases. And 28 U.S.C. § 1651(a) does not create an end run around the lack of appellate jurisdiction where, as here, the Government cannot meet the strict requirements for mandamus review.[1]

---

[1] It is unclear whether the district court even had jurisdiction to entertain the Government's motion to amend. *See* JA163 (district court conclusion that § 3596 did not grant it "authority and jurisdiction" to amend the judgment). The Government has not set forth any basis for the district court's jurisdiction in its jurisdictional statement, in contravention of Federal Rule of Appellate Procedure 28(a)(4)(A). *See* Br. of Appellant 5. The Government's jurisdictional statement likewise fails to comply with the requirement of Federal Rule of Appellate Procedure 28(a)(4)(C) that the appellant's brief set forth "the filing dates establishing the timeliness of the appeal or petition for review."

## STATEMENT OF THE ISSUE

I.      Did the district court correctly determine that it lacks authority to amend Mr. Higgs's judgment of sentence?

## STATEMENT OF THE CASE

### A.    Trial and Sentencing

During the early-morning hours of January 27, 1996, Tanji Jackson, Tamika Black, and Mishann Chinn were found dead of gunshot wounds along Route 197 in the Patuxent National Wildlife Refuge in Prince George's County, Maryland. Willis Haynes, Victor Gloria, and Mr. Higgs were all eventually charged in the killings. Mr. Haynes's and Mr. Higgs's cases were severed for trial; Mr. Gloria pleaded guilty and was the Government's key witness at both trials. Mr. Haynes was tried first; although the Government sought the death penalty against him, he received a life sentence. *See United States v. Haynes*, 26 F. App'x 123, 126 (4th Cir. 2001).

Mr. Higgs was tried next. The case against him was based primarily on the testimony of Mr. Gloria. *See United States v. Higgs*, 353 F.3d 281, 289 n.1 (4th Cir. 2003) ("Most of the facts surrounding the murders of the three women were obtained from [Mr. Gloria's] eyewitness testimony."). Mr. Gloria testified that during an evening of socializing at Mr. Higgs's apartment, an argument took place between Mr. Higgs and Ms. Jackson. *Id.* at 289. According to Mr. Gloria, this argument led Mr. Higgs to want to have the victims killed. *Id.* at 289–90. Mr.

4

Gloria testified that after the three women left the apartment following the fight, Mr. Higgs retrieved a gun and told Mr. Haynes to get the three women into Mr. Higgs's vehicle. *Id.* at 290. Mr. Gloria testified that he then got in the back seat of Mr. Higgs's vehicle and observed Mr. Higgs drive the three women to a secluded location along Route 197 while having whispered conversations with Mr. Haynes, pull over, and hand Mr. Haynes the gun with which to carry out the killings. *Id.*

While other evidence supported Mr. Higgs's presence at the scene, the allegation that Mr. Higgs aided, abetted, or caused Mr. Haynes to commit the killings was unsupported by any evidence other than Mr. Gloria's testimony. According to one of the trial prosecutors, the Government "could not have proceeded and obtain[ed] a conviction against Mr. Higgs" without Mr. Gloria's testimony. *See* Gloria Sentencing Tr. at 4:8–12, D. Md. ECF No. 579-1. The district court concurred in that assessment. *See id.* at 16:14-20 (describing Mr. Gloria as "the critical link in the conviction of these two men").

On October 11, 2000, Mr. Higgs was found guilty of three counts each of first-degree premeditated murder, first-degree murder committed during a kidnapping, and kidnapping resulting in death, along with firearms charges. *See Higgs*, 353 F.3d at 289. Following a sentencing hearing, the jury recommended death sentences on the nine death-eligible counts. *Id.*

Formal sentencing was held on January 3, 2001. JA114–35. The district court filed its written judgment on January 9, 2001, JA52–58, which was consistent with the sentence orally pronounced during the January 3 sentencing hearing.

The written judgment was drafted by the Government, pursuant to internal Department of Justice regulations. *See* JA120–21; *see also* 28 C.F.R. § 26.2. Mr. Higgs objected to the Government's proposed judgment as going "beyond what is required by Rule 32 of the Federal Rules of Criminal Procedure or by the relevant statute." JA121–22. Counsel for Mr. Higgs explained that the proposed judgment constituted an effort "to incorporate the current C.F.R. administrative regulations of the Department of Justice into the judgment and commitment" and would thus "be essentially arbitrary, capricious, to be cruel and unusual. It is an improper delegation of executive function, a violation of separation of powers and could also be a violation of due process." JA122. The Government responded that there was "ample authority for [the district court] to enter the order as drafted," JA123, which the district court did, JA123–24.

The judgment directed that Mr. Higgs's sentence on the nine capital counts was imposed "as provided on pages 3-6 of this judgment" and also "imposed pursuant to Title 18, United States Code, Sections 3591 through 3597, including particularly Sections 3594 at 3596." JA53.

**B.     Direct Appeal and Post-Conviction Proceedings**

This Court upheld the convictions and sentences on direct appeal. *Higgs*, 353 F.3d at 289. While the direct appeal was pending, Mr. Higgs filed a motion for a new trial, alleging that the Government had improperly withheld exculpatory material relating to two witnesses. The district court denied the motion for new trial, and this Court again affirmed. *United States v. Higgs*, 95 F. App'x 37 (4th Cir. 2004). Certiorari was denied with respect to each appeal. *Higgs v. United States*, 542 U.S. 999 (2004); *Higgs v. United States*, 543 U.S. 1004 (2004).

Mr. Higgs then filed a motion for relief under 28 U.S.C. § 2255 in the district court. On April 7, 2010, the district court denied the § 2255 motion without argument, discovery, or a hearing. *United States v. Higgs*, 711 F. Supp. 2d 479, 557 (D. Md. 2010). The court subsequently denied Mr. Higgs's motions for reconsideration and for a certificate of appealability (COA).

Mr. Higgs then sought a COA from this Court on numerous issues. The Court denied a COA on all but one issue, regarding the Government's withholding of exculpatory material relating to comparative bullet lead analysis and counsel's ineffectiveness in handling the issue, and subsequently denied relief. *United States v. Higgs*, 663 F.3d 726, 730 (4th Cir. 2011), *cert. denied sub nom. Higgs v. United States*, 568 U.S. 1069 (2012).

Mr. Higgs subsequently filed a motion in the District of Maryland seeking to set aside his final judgment under Federal Rule of Civil Procedure 60(d) due to fraud on the court. The 60(d) motion argued that the Government did not disclose all of the benefits received prior to trial by the Government's key witness, cooperating co-defendant Victor Gloria. In particular, the motion alleged Mr. Gloria was a suspect in an unrelated state murder prosecution, but that he was not charged after federal prosecutors and agents intervened on his behalf, and that the Government never disclosed these facts. The motion was denied by the district court, *United States v. Higgs*, 193 F. Supp. 3d 495, 496 (D. Md. 2016), and a COA was again denied in this Court, *Higgs v. United States*, No. 16-15 (4th Cir. 2017). The Supreme Court denied certiorari. *Higgs v. United States*, 138 S. Ct. 2572 (2018).

Meanwhile, Mr. Higgs sought and was denied permission from this Court to file a successive motion for relief pursuant to 28 U.S.C. § 2255, predicated on the United States Supreme Court's decision in *Johnson v. United States*, 576 U.S. 591, 597 (2015). *See* Order, *In re Higgs*, No. 16-8 (4th Cir. June 27, 2016), ECF No. 13. Following the Court's denial of permission to file a successive § 2255 motion, Mr. Higgs filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241 in the United States District Court for the Southern District of Indiana in a further attempt

to litigate his *Johnson* claim.[2] That petition was denied on April 30, 2020, Order

Denying Petition for a Writ of Habeas Corpus, *Higgs v. Daniels*, No. 2:16-cv-321-

JMS-MJD (S.D. Ind. Apr. 30, 2020), ECF No. 42, and is currently pending on

appeal in the United States Court of Appeals for the Seventh Circuit, *Higgs v.*

*Watson*, No. 20-2129 (7th Cir.). Oral argument in that appeal was heard on January

5, 2021.

### C.     The Government's Motion to Amend the Judgment

On August 4, 2020, the Government filed a one-and-a-half page motion to

amend Mr. Higgs's final judgment in the District of Maryland. JA59–60.

Specifically, the Government requested that the district court amend Mr. Higgs's

judgment to designate Indiana as the state implementing his death sentence,

pursuant to 18 U.S.C. § 3596. *Id.* As the Government conceded in its motion,

because Maryland abolished the death penalty following Mr. Higgs's sentencing,

*see, e.g.*, *Bellard v. State*, 157 A.3d 272, 274–75 (Md. 2017), Mr. Higgs's death

sentence was no longer enforceable pursuant to his judgment. JA60

---

[2] Mr. Higgs filed a second motion for permission to file a successive § 2255 petition in this Court following the Supreme Court's decision in *United States v. Davis*, 139 S. Ct. 2319, 2324, 2333 (2019). That motion was likewise denied. *See* Order, *In re Higgs*, No. 20-2 (4th Cir. Feb. 6, 2020), ECF No. 17. He also recently filed a second § 2241 petition in the Southern District of Indiana that raises issues relating to the undisclosed benefits received by Mr. Gloria prior to trial and flaws in Mr. Higgs's indictment. *See Higgs v. Watson*, No. 2:20-cv-00665-JPH-DLP (S.D. Ind.). That petition remains pending.

(acknowledging that "[t]he U.S. Marshal cannot implement sentence based on a non-existent statute").[3]

Mr. Higgs filed a response in opposition to the motion to amend on August 18. JA70–77. He noted in the response that criminal judgments may be modified in only certain limited circumstances and that the Government had not acknowledged this prohibition nor suggested that the prohibition was inapplicable here. JA70–73. He requested in the alternative that, should the district court believe it possessed the authority to amend Mr. Higgs's judgment to designate a state for implementation of his death sentence, it choose Virginia instead of Indiana. JA73–77.

The Government then filed a nineteen-page reply in support of its one-and-a-half-page motion. JA79–97. In the reply, the Government stated that it "agrees that this case does not present circumstances that would permit the Court to alter Higgs's criminal judgment," thereby disavowing the relief it requested in its motion to amend. JA84; *see also* JA85 (first heading in argument section of reply titled: "The Court Need Not and Should Not Amend the Judgment").

---

[3] The Government also made the inconsistent argument that it "already has the authority to implement the defendant's death sentence" pursuant to what it characterized as "the inherent constitutional authority of the President to take care that the laws are faithfully executed and from the Court's January 3, 2001 oral and written imposition of a sentence of death." JA60. The Government has abandoned this "inherent authority" argument on appeal.

The Government instead suggested two alternative forms of relief, both for the first time in reply. It first suggested that the district court could "supplement" Mr. Higgs's "Judgment and Order" because the directives regarding the implementation of the death sentence contained therein "reside in the Court's order, not the judgment." JA84. In the Government's view, the "general rule that a criminal sentence may not be modified once imposed therefore does not prevent this Court from modifying those directives." JA86.

Although the Government was expressly asking the district court to "modify[] those directives," which it said were not part of the judgment at all, it (inconsistently) asserted in the next sentence that the district court "need not change or rescind any directives in its Judgment and Order regarding the procedures for implementing Higgs's execution." *Id.* This was so, according to the Government, because its proposed supplement is consistent with Mr. Higgs's judgment. JA86–87.

The alternative new form of relief requested by the Government differed in form, but not function: for the district court to enter a separate order designating Indiana as the implementing state. JA87.

The day after the Government filed its reply, Mr. Higgs filed a motion to strike or summarily deny the Government's motion and reply or, in the alternative, for permission to file a surreply. D. Md. ECF No. 645. The motion to strike noted

11

that the reply requested an entirely new form of relief and raised several arguments for the first time. *Id.*

The district court denied the request to strike or summarily deny, but granted permission for Mr. Higgs to file a surreply. Order, D. Md. ECF No. 646. Mr. Higgs filed his surreply on September 18, 2020. JA103–12.

On November 20, 2020, without waiting for the district court to rule on the motion to amend, the Government informed Mr. Higgs that it had scheduled his execution for January 15, 2021. JA152.

On December 29, 2020, the district court denied the Government's motion. JA154–66. It determined that "[t]he Government's initial, extraordinary request that the Court amend its original judgment and sentence is something that the Court plainly cannot do." JA159. It observed that while the Government "abruptly changed its stance" between its motion and its reply, "[t]his avails the Government not at all." JA160. It rejected the Government's primary reply contention that the directives for implementing Mr. Higgs's death sentence were not in fact contained in the judgment as "wholly unpersuasive." JA160 n.8. And it concluded that "a supplemental order designating a different state for Higgs's execution would constitute an amendment of the original judgment in all but name." JA161.

The district court then rejected the Government's argument that it could simply designate a new state by entering a separate order. The district court

described the Government's second reply proposal as "an alternative of questionable distinction," JA161, and ultimately concluded that "any order it might issue designating a state other than Maryland for the implementation of Higgs's death sentence—whether labeled an amendment, a supplement, or a new order— would necessarily modify its 2001 Judgment and Order and therefore would be beyond the authority of the Court," JA165.

In rejecting this alternative argument, the district court rejected the Government's textual argument as to what 18 U.S.C. § 3596 requires. JA162–63. It held that "[i]n no sense does section 3596 grant the Court authority and jurisdiction it does not otherwise possess, i.e., to amend or supplement its judgment well after the fact." JA163.

## SUMMARY OF THE ARGUMENT

The strict prohibition on amending criminal judgments except in limited circumstances not present here forecloses the Government's argument that the district court should have designated Indiana to implement Mr. Higgs's death sentence. The Government largely ignores this prohibition, instead claiming that the FDPA grants authority to modify criminal judgments that is included nowhere in the text of the statute. The Government's alternative arguments that its proposed new designation does not in fact alter Mr. Higgs's judgment do not withstand scrutiny.

The Government is also wrong about what the text of the FDPA requires. Even in the absence of the prohibition on modifying criminal judgments, the Government's suggestion that the FDPA authorizes district courts in jurisdictions that do not maintain the death penalty to designate new implementing states whenever they please is meritless.

Alternatively, the Government requests issuance of a writ of mandamus. Even assuming that this is not an improper attempt to evade the limits on Government appeals in criminal cases, *but see* Mot. to Dismiss, ECF No. 10, the Government cannot meet the strict limits on mandamus review. In particular, it cannot show that it has a clear right to the relief requested. Its alternative request should therefore be denied.

## STANDARD OF REVIEW

This Court reviews questions of law de novo. *United States v. Mouzone*, 687 F.3d 207, 221 (4th Cir. 2012). Jurisdiction is a question of law subject to de novo review. *United States v. Barton*, 26 F.3d 490, 491 (4th Cir. 1994).

## ARGUMENT

I.  **THE DISTRICT COURT CORRECTLY DETERMINED THAT IT LACKED AUTHORITY TO DESIGNATE A STATE TO IMPLEMENT MR. HIGGS'S DEATH SENTENCE.**

The district court correctly determined that the "strong prohibition against amending a criminal sentence" precludes it from designating Indiana for purposes of implementing Mr. Higgs's death sentence. JA165. The Government has

conceded that it cannot effectuate Mr. Higgs's death sentence in the absence of a new court order designating a state whose law and location will be used to conduct the execution. JA60. Such a designation now will have the unmistakable effect of granting the Government authority to execute Mr. Higgs contrary to the 2001 judgment and sentence.

The Government's focus on what it believes the FDPA requires is thus irrelevant. The Government has pointed to nothing within the statute that remotely confers jurisdiction to amend a criminal judgment where none otherwise exists. And the Government's fallback arguments that designation of a new state not identified in Mr. Higgs's judgment would not constitute an amendment are unpersuasive.

While the Government's arguments about what the text of the FDPA authorizes are beside the point, they are also wrong. As the district court correctly determined, the text of 18 U.S.C. § 3596 is at best ambiguous. JA162. The Government lacks any legitimate basis for amending the judgment to designate Indiana as the state implementing Mr. Higgs's death sentence.

### A. Mr. Higgs's Judgment Cannot Be Modified.

A "'judgment of conviction that includes [a sentence of imprisonment] constitutes a final judgment' and may not be modified by a district court except in limited circumstances." *Dillon v. United States*, 560 U.S. 817, 824 (2010) (quoting

18 U.S.C. § 3582(b)) (alteration in original); *see also United States v. Chambers*, 956 F.3d 667, 671 (4th Cir. 2020) ("Generally, sentences may not be modified once imposed."). Specifically, "[a]fter sentence has been imposed, the district court may not alter the sentence except as authorized by Fed. R. Crim. P. 35 or 18 U.S.C.A. § 3582(c)." *United States v. Griffin*, 60 F.3d 826 (4th Cir. 1995) (Table); *accord United States v. Fraley*, 988 F.2d 4, 6 (4th Cir. 1993).

Neither Federal Rule of Criminal Procedure 35 nor § 3582(c) authorizes an amendment to Mr. Higgs's judgment in this circumstance, and the Government has never contended otherwise. Rule 35(a) allows courts to "correct a sentence that resulted from arithmetical, technical, or other clear error." And Rule 35(b) allows courts to reduce a sentence if the defendant has provided substantial assistance to the Government in another prosecution.[4] It is inapplicable.

Section 3582(c) is likewise inapplicable. It permits sentencing reductions for "extraordinary and compelling reasons," and for certain prisoners over seventy years of age. 18 U.S.C. §§ 3582(c)(1)(A)(i)–(ii). And it permits sentencing modifications to a "term of imprisonment" that are "otherwise expressly permitted by statute" or Rule 35, § 3582(c)(1)(B), and in certain circumstances where

---

[4] Rule 35 sentence corrections or reductions must also occur within fourteen days or one year of sentencing, respectively. Fed. R. Crim. P. 35(a), (b)(1). These deadlines have long passed. Later motions for sentence reduction are permitted only in limited circumstances not applicable here. *See* Fed. R. Crim. P. 35(b)(2).

sentencing ranges have been lowered by the United States Sentencing Commission, § 3582(c)(2). As the Government conceded below, none of these circumstances are present here. *See* JA84 (acknowledging that "this case does not present circumstances that would permit the Court to alter Higgs's criminal judgment").

Title 18 U.S.C. § 3582(b) makes clear that the above-listed set of narrow circumstances are the exclusive exceptions to the prohibition on sentence modifications:

> (b) Effect of finality of judgment.—Notwithstanding the fact that a sentence to imprisonment can subsequently be—
>
> > (1) modified pursuant to the provisions of subsection (c);
> >
> > (2) corrected pursuant to the provisions of rule 35 of the Federal Rules of Criminal Procedure and section 3742; or
> >
> > (3) appealed and modified, if outside the guideline range, pursuant to the provisions of section 3742;
>
> a judgment of conviction that includes such a sentence constitutes a final judgment *for all other purposes*.

18 U.S.C. § 3582(b) (emphasis added).

In the absence of an applicable exception set forth in either Rule 35 or § 3582(c), the district court lacked authority to modify Mr. Higgs's sentence nearly two decades after it was imposed. As the district court explained, this Court has "taken a very narrow view of the authority of district courts to amend *any* aspect of

17

a criminal sentence in the absence of an explicitly recognized exception authorizing such amendment." JA159 (emphasis in original). In *United States v. Jones*, this Court explained that, "[a]lthough there are circumstances under which a district court may modify or correct a criminal judgment order, none of them authorize[s] the district court to [amend a judgment] based solely on a subsequent change in case law." *United States v. Jones*, 238 F.3d 271, 272 (4th Cir. 2001). *Jones* thus held that a district court lacked authority to amend the defendant's judgment to require immediate payment of the originally imposed fine to bring the sentence in compliance with subsequent legal developments. *Id.* at 272–73, 273 n.2.

Most of the argument in the Government's brief is therefore irrelevant. The Government's contentions about what the FDPA in theory requires do not matter if there is no mechanism for a court to implement the FDPA's provisions years after the fact. As the district court correctly ruled, "[i]n no sense does section 3596 grant the Court authority and jurisdiction it does not otherwise possess, i.e., to amend or supplement its judgment well after the fact." JA163. Other than repeatedly complaining that this would create an "absurd" result, Br. of Appellant 3, 11, 15, 21, 23, the Government does little to suggest that the FDPA or any other source of

authority actually confers authority and jurisdiction on the district court to do what the Government asks.[5]

The only real attempt the Government makes to overcome the prohibition on modification of criminal judgments is to claim that the "specific authorization" contained in § 3596(a) overrides any "general rule" against modifying criminal judgments. Br. of Appellant 25. As support for this proposition, the Government includes a *cf.* citation to *Radzanower v. Touche Ross & Co.*, 426 U.S. 148, 153

---

[5] In making its repeated "absurd result" complaint, the Government misrepresents the district court's opinion. The Government variously claims that the district court "appeared to recognize," Br. of Appellant 3, "seemed to acknowledge," *id.* at 15, "acknowledged," *id.* at 11, 23, and even "conceded," *id.* at 21, that its ruling produced an absurd result. In each instance, the Government cites JA164–65 for this proposition. What the district court actually said on those pages is:

> In the Government's view, not allowing the designation of a state other than Maryland "would be an absurd result and itself contrary to the sentence of death." Gov't Reply at 9. But *reductio ad absurdum* never fares well against *dura lex, sed lex*. This is especially true when it is a matter of life and death. A mere desire to avoid an unintended result cannot overcome a district court's lack of authority to amend a criminal judgment. Congress may not have intended for section 3596 to "provide a windfall to a defendant" in this rarest of circumstances, *id.* at 11, but that appears to be the outcome. Unless and until the Fourth Circuit or indeed the Supreme Court creates a relevant exception to the prohibition, such that *Jones* and *Lightner* would not be relevant or controlling here, the Court concludes that it lacks authority to amend or supplement its judgment to avoid a purportedly "absurd result."

JA164–65. In no way did the district court "concede" or even "acknowledge" that the Government's characterization of the result as "absurd" was apt.

(1976), for the proposition that "a specific statute will not be controlled or nullified by a general one." *Id.* (modification removed). The complete quote from *Radzanower* is: "*Where there is no clear intention otherwise*, a specific statute will not be controlled or nullified by a general one, regardless of the priority of enactment." *Radzanower*, 426 U.S. at 153 (quoting *Morton v. Mancari*, 417 U.S. 535, 550–51 (1974)). Section 3582(b) makes clear that criminal judgments are final "for all other purposes" besides the limited modification possibilities contained in Federal Rule of Criminal Procedure 35 and in § 3582(c). In other words, the "general" statute restricting sentencing modifications to a narrow set of exceptions affirmatively forecloses the prospect of sentencing modifications not contained within those exceptions. This is doubly so where the Government's suggestion that § 3596 permits the requested sentence modification is based on an unsupported inference that Congress intended such a result without saying so.

The Government has forfeited any argument that a court may properly amend Mr. Higgs's judgment in any event. It specifically argued below that it "agrees that this case does not present circumstances that would permit the Court to alter Higgs's criminal judgment." JA84.

The Government instead makes two brief arguments that the district court's designation of Indiana would not constitute a modification of Mr. Higgs's judgment at all. Neither is persuasive.

20

The Government first argues that "designating Indiana now would simply be giving effect to the 2001 judgment's explicit reference to the procedures contemplated in Section 3596," and thus does not constitute an improper modification of Mr. Higgs's judgment. Br. of Appellant 24. The Government is mistaken. As the district court correctly found, JA160–61, this Court's opinion in *United States v. Lightner*, 266 F. App'x 240, 242 (4th Cir. 2008), is instructive. In *Lightner*, the district court sought to "clarify the verbiage used in Mr. Lightner's Judgment and Commitment" regarding payment of a fine. This Court explained that while the district court's action was "intended to clarify the language of the sentencing court and to enforce the sentencing court's original intent, [this Court] find[s] that the district court's opinion constituted an unauthorized amendment to the judgment." *Id.*

*Lightner* is consistent with the longstanding understanding that even the most minor changes that have the effect of altering final criminal judgments are improper. In "criminal cases, as well as civil, the judgment is final for the purpose of appeal when it terminates the litigation between the parties on the merits and leaves nothing to be done but to enforce by execution what has been determined." *Berman v. United States*, 302 U.S. 211, 212–13 (1937) (internal quotation marks and citations omitted). *Berman* therefore rejected a district court's attempt to

21

resentence a defendant by adding a one-dollar fine to each count of conviction while otherwise not altering the initial sentence. *Id.* at 212, 214.

Here, the Government has repeatedly acknowledged that it cannot execute Mr. Higgs under the judgment as it currently exists in light of Maryland's repeal of its death penalty. JA60 ("The U.S. Marshal cannot implement sentence based on a non-existent statute."); Br. for Appellant 1 ("The [district] court held that Maryland's repeal of its state death penalty in 2013 meant that the United States could no longer carry out Higgs's federal death sentence.") (emphasis removed). If the addition of a one-dollar fine is sufficiently meaningful to constitute a change in sentence, surely the addition of authority to execute someone where none currently exists is as well. The district court correctly rejected the Government's argument. JA164 ("[A]lthough an order designating a state other than Maryland to implement Higgs's sentence might not literally contradict the explicit language of the Judgment and Order, it would definitely change its effect.").

The Government next argues that "designation under Section 3596(a) would not modify the criminal judgment at all because it only modifies the means by which the sentence is to be implemented." Br. of Appellant 25. This is equally misplaced. *Berman* makes clear that "[f]inal judgment in a criminal case means sentence. The sentence is the judgment." *Berman*, 302 U.S at 212; *accord Burton v. Stewart*, 549 U.S. 147, 156 (2007) (per curiam). The district court thus flatly

rejected the Government's similar suggestion below that "the relevant portion of the written Judgment and Order, including the statutory references and procedural directives, is not in fact part of the sentence," finding it to be "wholly unpersuasive, both as a practical matter and in light of the Supreme Court and Fourth Circuit precedent described herein." JA160 n.2 (citing *Berman*, 302 U.S. at 212). The Government does not address, let alone refute, the district court's ruling in this regard.

The Government's attempt to further its "mere implementation" argument by analogizing this circumstance to the Bureau of Prisons' authority to transfer a prisoner from one correctional institution to another only highlights the weakness of the Government's position. *See* Br. of Appellant 25–26. As the Government correctly points out, in the context of incarceration, "Congress has provided that the Bureau of Prisons—not the sentencing court—'shall designate the place of the prisoner's imprisonment.'" *Id.* (quoting 18 U.S.C. § 3621). Congress has done exactly the opposite under the FDPA. *See* 18 U.S.C. § 3596(a) (designation of implementing state where state of conviction does not maintain the death penalty to be made by sentencing court). If sentencing courts were permitted to designate specific correctional institutions or other conditions of confinement relating to terms of incarceration in criminal judgments, those dictates would likewise be binding on the Bureau of Prisons and not subject to later modification.

**B.** **The Government Is Wrong About What the FDPA Requires in Any Event.**

The Government spends the bulk of its brief ignoring the clear prohibition on modifying criminal judgments and instead arguing that the district court's acknowledgment of that prohibition "cannot be reconciled with the text, structure, history, or purpose of the FDPA." Br. of Appellant 14. For the reasons set forth above, the Government's argument is irrelevant; it is also wrong.

The Government relies on a strained interpretation of § 3596(a), which provides as follows:

> [1] A person who has been sentenced to death pursuant to this chapter shall be committed to the custody of the Attorney General until exhaustion of the procedures for appeal of the judgment of conviction and for review of the sentence. [2] When the sentence is to be implemented, the Attorney General shall release the person sentenced to death to the custody of a United States marshal, who shall supervise implementation of the sentence in the manner prescribed by the law of the State in which the sentence is imposed. [3] If the law of the State does not provide for implementation of a sentence of death, the court shall designate another State, the law of which does provide for the implementation of a sentence of death, and the sentence shall be implemented in the latter State in the manner prescribed by such law.

The Government argues that because the second sentence of § 3596(a) is introduced by the clause "When the sentence is to be implemented," and deals with the time of the execution, the third sentence must also be referring to the time of execution. Br. of Appellant 18–19.

24

The district court correctly rejected this argument. As the district court pointed out, "the third sentence could just as easily be read in relation to the last phrase of the second sentence, which refers to the original imposition of the sentence (i.e., "in the manner prescribed by the law of the State *in which the sentence is imposed*"). Mem. Op., JA162 (emphasis in Mem. Op.). The district court preferred this reading of the statute to the Government's, based on this analysis of the text, the rule of lenity, the consistent practice of district courts in designating (if necessary) another state at the time of sentencing, and the fact that very few people have received federal death sentences in states that later abolished the death penalty. JA162–64, JA162 n.3. The Government's counterarguments are internally contradictory and unavailing.

The Government's primary argument is that the "logical and temporal flow" of § 3596(a) "centers on implementation rather than imposition of the sentence," Br. of Appellant 20–21; i.e., the third sentence of § 3596(a) applies only at the time of execution, not at the time of sentencing. In support of this concept, the Government cites *United States v. Wilson*, 503 U.S. 329 (1992), for the principle that "Congress use of a verb tense is significant in construing statutes." *Id.* at 333; *see* Br. of Appellant 19. But the Court's application of that principle in *Wilson* was *directly contrary* to the Government's argument here.

In *Wilson*, the issue was whether the district court could give jail time credit under 18 U.S.C. § 3585(b) at the imposition of sentence. Section 3585(b) required that such credit be afforded, but courts differed about *when* such credit was due. The Court rejected the defendant's argument for credit at sentencing:

> Section 3585(b) indicates that a defendant may receive credit against a sentence that "*was imposed.*" It also specifies that the amount of the credit depends on the time that the defendant "*has spent*" in official detention "prior to the date the sentence commences." Congress' use of a verb tense is significant in construing statutes. By using these verbs in the past and present perfect tenses, Congress has indicated that computation of the credit must occur after the defendant begins his sentence. A district court, therefore, cannot apply § 3585(b) at sentencing.

503 U.S. at 333 (emphasis in *Wilson*).

The same principle applies here, but the verb tense used is the opposite. Here, immediately before the sentence in question, Congress spoke of the time at which the sentence "*is imposed*"—not "*was imposed*," as in *Wilson*. This opposite use of verb tense can lead only to the opposite result—here, the district court *must* apply § 3596(a) at sentencing.

The Government's argument is also contrary to the understanding of the trial court and the Government at the time of sentencing, and to the longstanding practice of the Department of Justice and the courts.

In this case, the Government prepared and submitted to the trial court a proposed judgment and order, consistent with regulations the Department of

Justice promulgated in 1993. *See* JA121–23; 28 C.F.R. §§ 26.1–26.4 (2000); *see also* JA80–81 (Government discussing the terms of the regulations in its reply below). Defense counsel objected to the provisions of the proposed order, which had been drafted by the Government. JA121–23; JA137–39. The district court adopted the proposed order submitted by the Government, which incorporated the provisions of 18 U.S.C. §§ 3591–3597, "including particularly Sections 3594 and 3596." JA53. If § 3596 did not apply at sentencing, there was no reason for the Government to request that the district court impose, or for the district court to agree to impose, the sentence pursuant to § 3596. As the district court has noted, in adopting that judgment and order, as proposed by the Government, the district court designated Maryland as the implementing state. JA164.

For the Government to come before the district court now and say that the judgment and order that it wrote, which explicitly referenced § 3596(a) *at the time sentence was imposed*, was all a mistake and was based on a misunderstanding of § 3596(a) is passing strange. That the understanding of § 3596(a) which the Government and the court had at the time sentence was imposed is now inconvenient for the Government is no reason for the district court to retroactively change that judgment and order.

In addition, any time that a federal district court has imposed the death sentence in a state that did not provide for the implementation of the death

27

sentence, the Government requested designation of another state pursuant to § 3596 and the district court did so, *at the time of sentencing*. *See* JA163 (citing cases); *see also United States v. Sampson*, 300 F. Supp. 2d 278, 279–80 (D. Mass. 2004) (designating New Hampshire as the state of execution at the time of sentencing, pursuant to § 3596); Judgment at 3, *United States v. Honken*, No. CR 01-3047 (N.D. Iowa Oct. 11, 2005), ECF No. 702-2 (designating Indiana "[p]ursuant to 18 U.S.C. § 3596"). The Government attempts to avoid the obvious implications of this consistent practice by suggesting that courts have the discretion to designate a state at the time of sentencing, but are not required to do so. Br. of Appellant 19 n.2. This is a post hoc rationalization. At the time of sentencing, the Government asserted, and all of these courts believed, that their actions were required by § 3596. This Court should remain faithful to that consistent understanding of the statute. *See* Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 16 (2012) (The words of a law "mean what they conveyed to reasonable people at the time").

As a fallback to its textual argument, the Government contends that any other reading of the statute would lead to "absurd" results, Br. of Appellant 21, i.e., that the Government would have difficulty executing a handful (or less) of death-sentenced prisoners. *See* JA163–64 (citing *United States v. Lighty*, No. 03-cr-457 (D. Md. Mar. 10, 2006), and *United States v. Mikos*, No. 02-cr-137 (N.D. Ill.

2006), where the judgments specifically provided that the death sentence would be implemented pursuant to the law of a state that has since abolished the death penalty). This contention—that disruption in the Government's execution plans for a few prisoners is "absurd"—is remarkable. To the extent that the statute does not work perfectly from the Government's perspective, that is something for Congress to fix. Whether or not it would "have been a good idea for Congress to have written" § 3596 differently, the question is what "Congress actually wrote . . . . To answer that question, we need to examine the statute's text, context, and history." *United States v. Davis*, 139 S. Ct. 2319, 2327 (2019). As shown above, the "text, context, and history" of § 3596 compel the reading adopted by the district court.

## II. THE GOVERNMENT'S ALTERNATIVE REQUEST FOR MANDAMUS IS MERITLESS AND PROCEDURALLY IMPROPER.

The Government, in a stated alternative to its appeal, seeks from this Court a writ of mandamus. It cannot meet the stringent test for issuing the writ.[6]

Mandamus "is a drastic remedy, to be invoked only in extraordinary situations." *United States v. Moussaoui*, 333 F.3d 509, 516 (4th Cir. 2003) (internal citations and quotes omitted). To obtain mandamus, the Government must meet a three-prong test: (1) it must have no other adequate means to attain the relief it

---

[6] The Government's request is also procedurally improper for the reasons set forth in Mr. Higgs's Motion to Dismiss Government's Appeal and Petition for Writ of Mandamus, ECF No. 10.

desires; (2) it must show that its right to issuance of the writ is clear and indisputable; and (3) even if it satisfies the first two criteria, the issuing court, in the exercise of its discretion, must be satisfied that the writ is appropriate under the circumstances. *Id*. at 517; *In re Trump,* 958 F.3d 274, 281 (4th Cir. 2020) (en banc); *see also Will v. United States*, 389 U.S. 90, 96 (1967).

Even "the contention that a naked error of law amounts to an abuse of discretion entitling a petitioner to mandamus relief has been repeatedly rejected by the Supreme Court." *Trump*, 958 F.3d. at 284. The courts, through mandamus, "cannot and will not grant the Government a right of review which Congress has chosen to withhold." *Will*, 389 U.S. at 97 n.5; *see also United States v. Roberts*, 88 F.3d 872, 884 (10th Cir. 1996) ("Were we to accede to the government's request [for mandamus relief], we would be expanding the government's right to bring interlocutory criminal appeals beyond the terms of [18 U.S.C. § 3731]. We do not believe mandamus provides the appropriate avenue for such expansion."). This Court recently rejected a petition for writ of mandamus in *Trump*, observing that mandamus was inappropriate where "the district court promptly recognized and ruled on the request for certification in a detailed written opinion that applied the correct legal standards," the district court's "action was not arbitrary or based on passion or prejudice," and the mandamus petitioner "does not contend that the

district court denied certification for nonlegal reasons or in bad faith." 958 F.3d at 285.

A review of the three factors set forth above shows that the Government is not entitled to the writ.

(1)    While the Government may not have any other means of obtaining the relief it desires, insofar as it has no right to appeal, "[m]andamus, of course, may never be employed as a substitute for appeal in derogation of these clear policies [limiting government appeals in criminal cases]." *Will*, 389 U.S. at 97 (citing cases); *see also United States v. McVeigh*, 106 F.3d 325, 333 (10th Cir. 1997). The Government curiously frames its "adequate alternative means" discussion primarily as a question of timing. Br. of Appellant 31. It notes that it requested that the district court designate Indiana on August 4, 2020, and then complains that timely enforcement of sentence should not be "frustrated by the district court's failure to rule on the government's motion until December 29." Br. of Appellant 31. The Government's contention is remarkable. It waited until *seven years* after Maryland abolished its death penalty to make its motion and now scolds the district court for taking *three months* after the completion of briefing to issue its ruling. As the district court recognized, any exigency the Government asserts is occasioned, not by concerns about the timely administration of justice, but by its zeal to

execute as many people as it possibly can "in the waning days of the current administration." JA158 n.1.

(2) As demonstrated above, the Government does not have a clear and indisputable right to the relief it seeks. To the contrary, the Government is entitled to no relief whatsoever. It acknowledged in the district court that "this case does not present circumstances that would permit the Court to alter Higgs's criminal judgment." JA84. And its argument about what the FDPA requires depends on its novel characterizations of the "logical and temporal flow" of the statute. Br. of Appellant 20. Clear and indisputable rights do not turn on interpretations of a statute's "flow." Even if there were an error of law—and there is none—"a naked error of law" does not entitle a petitioner to mandamus. *Trump*, 958 F.3d. at 284.

(3) Finally, this Court, in an exercise of its discretion, should decline to issue the writ. As in *Trump*, the Government does not contend that the district court denied its motion for "nonlegal reasons or in bad faith." *Trump,* 958 F.3d at 285. The district court's denial was grounded in reasonable (and correct) interpretations of the relevant statutes and decisions of this Court.

It is difficult to take seriously the Government's assertion that the district court's refusal to improperly modify Mr. Higgs's judgment to facilitate its desire to execute him interferes with Executive Branch functioning. Br. of Appellant 31-32. As discussed above, the Government *wrote* the judgment in this case, successfully

persuading the sentencing court to incorporate Justice Department regulations into Mr. Higgs's sentence. Because "[t]he Government's right to appeal in criminal cases has historically been severely limited," *United States v. Moussaoui*, 483 F.3d 220, 226 (4th Cir. 2007), it is in fact the Government that is seeking to make an "unwarranted impairment of another branch in the performance of its constitutional duties," *Cheney v. U.S. Dist. Court*, 542 U.S. 367, 390 (2004). This Court's "judicial restraint is ultimately guided and informed by a very broad principle—the constitutional distribution of power between the legislative and judicial branches of our government." *McVeigh*, 106 F.3d at 331. This Court should decline to grant mandamus.

## CONCLUSION

For the reasons set forth above, this Court should dismiss the Government's appeal for lack of jurisdiction, deny the Government's request for mandamus, and/or affirm the district court's refusal to modify Mr. Higgs's final judgment on the merits.

Respectfully submitted,

/s/ Matthew Lawry                             /s/ Stephen H. Sachs

Matthew Lawry

Federal Community Defender Office
  for the Eastern District of Pennsylvania

The Curtis, Suite 545-West

601 Walnut Street

Philadelphia, PA 19106

(215) 928-0520

Matthew_Lawry@fd.org

Stephen H. Sachs

Roland Park Place

830 W. 40th Street, Apt. 864

Baltimore, MD 21211

(410) 243-4589

 stephenhsachs@gmail.com

Counsel for Dustin J. Higgs

January 7, 2021

34

## REQUEST FOR ORAL ARGUMENT

In light of the importance and complexity of the issues presented in this appeal, and because this is a capital case, Appellee Dustin Higgs respectfully requests that the Court hear oral argument.

/s/ Matthew Lawry
Matthew Lawry

**CERTIFICATE OF COMPLIANCE WITH FED. R. APP. P. 32**

I, Matthew Lawry, hereby certify that the Brief of Appellee is set in fourteen-point Times New Roman typeface. I further certify that the Brief of Appellee contains 7,866 words, excluding the portions exempted by Fed. R. App. P. 32(f), and thus complies with the type-volume limitation set forth in Fed. R. App. P. 32(a)(7)(B).

/s/ Matthew Lawry
Matthew Lawry

## CERTIFICATE OF SERVICE

I, Matthew Lawry, hereby certify that on this 7th day of January, 2021, I

filed the Brief of Appellee via ECF with service via electronic delivery to counsel

for Appellant:

Ellen E. Nazmy
Special Assistant United States Attorney
Office of the United States Attorney
6500 Cherrywood Lane, Ste. 200
Greenbelt, MD 20770

Jeffrey A. Hall
Counsel to the Assistant Attorney General
Civil Division, Department of Justice
950 Pennsylvania Ave., NW
Washington, DC 20530

/s/ Matthew Lawry
Matthew Lawry