No. 20-18

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FOURTH CIRCUIT

## UNITED STATES OF AMERICA,

Appellant,

v.

## DUSTIN HIGGS,

Appellee.

*Appeal from the United States District Court for the
District of Maryland, Southern Division,
Honorable Peter J. Messitte, U.S. District Judge*

## GOVERNMENT RESPONSE TO APPELLEE'S MOTION TO DISMISS

**Jeffrey A. Hall**
**Counsel to the Assistant
    Attorney General**
**Civil Division**
**Department of Justice**
**950 Pennsylvania Ave. NW**
**Washington, DC 20530**
**(202) 353-8679**

**Robert K. Hur**
**United States Attorney**

**Ellen E. Nazmy**
**Special Assistant United States Attorney**
**6500 Cherrywood Lane, Suite 200**
**Greenbelt, Maryland 20770**
**(301) 344-4433**

**January 8, 2021**

*Attorneys for the Appellant*

**INTRODUCTION**

Twenty years ago, a federal jury in the District of Maryland found defendant Dustin John Higgs guilty of the kidnapping and murder of three women, and recommended that he be sentenced to death for his crimes. On January 3, 2001, accepting the jury's recommendation, the district court imposed nine death sentences. Higgs's conviction and sentence became final in 2004, upon the completion of his direct appeal proceedings.

On December 29, 2020, however, the district court held that, as a practical matter, the Executive Branch can never carry out Higgs's lawful sentence because of the State of Maryland's intervening repeal of its capital sentencing laws. Although the Federal Death Penalty Act (FDPA) requires a district court to designate the laws of another State for use in implementing a federal capital sentence in circumstances where the laws of the State of sentencing do not provide for capital punishment, *see* 18 U.S.C. § 3596(a), the court concluded that that requirement applies only at the time of sentencing—and that if state law changes *after* sentencing, no other State's laws can ever be designated. It therefore indicated that it would not provide the designation necessary for carrying out Higgs's sentence unless and until "a higher court dispels [its] concern that it lacks authority to act." JA 165.

Having obtained below what even the district court described as a "windfall," Higgs now argues that no higher court can *ever* "dispel[]" the district court's

1

"concern that it lacks authority to act." *Id.* at 164-65. Relying on a "general rule . . . that section 1291 does not authorize Government appeals in criminal cases," Mot. 6 (quoting *United States v. Hundley*, 858 F.2d 58, 64 (2d Cir. 1988)), Higgs argues that the district court's refusal to make the designation required by the FDPA is wholly unreviewable either on appeal or through the exercise of this Court's mandamus authority.

That argument is baseless. As both this Court and the Supreme Court have recognized, the "general rule" on which Higgs relies is inapplicable where the government appeals an order that "possess[es] sufficient independence from the main course of the prosecution to warrant treatment as [a] plenary order[], and thus be appealable on the authority of 28 U.S.C. § 1291." *United States v. Moussaoui*, 483 F.3d 220, 228 (4th Cir. 2007) (quoting *Carroll v. United States*, 354 U.S. 394, 403 (1957)). The district court's order here, entered nearly two decades after Higgs's sentence became final, readily satisfies that standard: it concerns an issue of implementation collateral to the 2001 judgment of conviction and sentence, and does not implicate any of the "traditional concerns that come into play when the Government seeks to appeal in a criminal case." *Id.* at 232. The district court's expectation that this Court would provide further review of its decision, *see* JA 165, was thus well-founded, and this Court should reverse the district court's erroneous refusal to designate Indiana law under the FDPA.

Moreover, even if Section 1291 did not authorize an appeal, this Court has authority to grant mandamus relief to provide the guidance on the FDPA's applicability that the district court invited. Higgs argues that use of such authority would be inappropriate in the criminal context, but the Supreme Court recognized more than a century ago that mandamus relief is an appropriate mechanism by which to correct an erroneous district court decision that would have the effect of preventing the Executive Branch from implementing a lawful sentence. *See Ex parte United States*, 242 U.S. 27, 37-38, 52 (1916). This case comes squarely within that rule. If this Court were to conclude that it lacks jurisdiction under Section 1291, or that proceeding by mandamus would facilitate the expeditious resolution of the government's claim, it would accordingly be appropriate to enter a writ of mandamus directing the district court to designate Indiana law under the FDPA.

## ARGUMENT

### I. THIS COURT HAS JURISDICTION TO REVIEW THE DISTRICT COURT'S ORDER UNDER 28 U.S.C. § 1291

A. Congress has expressly provided that "[t]he courts of appeals . . . shall have jurisdiction of appeals from all final decisions of the district courts of the United States . . . except where a direct review may be had in the Supreme Court." 28 U.S.C. § 1291. Higgs does not dispute that this appeal comes squarely within that statutory text, as the district court entered a definitive ruling on the government's post-judgment motion to designate Indiana law under the FDPA. *See* Gov't Br. 27-

30. Nevertheless, Higgs argues that appellate jurisdiction here should be governed not by the text of Section 1291, but rather by a "'historic policy . . . that denies the Government the right of appeal in criminal cases save as expressly authorized by statute.'" Mot. 6 (quoting *Di Bella v. United States*, 369 U.S. 121, 130 (1962)); *see, e.g.*, 18 U.S.C. §§ 3731, 3742 (authorizing government appeals in criminal cases in certain circumstances). Because Congress has not created an appeal mechanism specifically addressing orders making (or refusing to make) designations under the FDPA, Higgs argues that such orders are unreviewable. *See* Mot. 6-10.

There is no basis for Higgs's contention. The "historical policy" upon which Higgs relies, as his own cases confirm, has never applied where the government appeals an order that "possess[es] sufficient independence from the main course of the prosecution to warrant treatment as [a] plenary order[], and thus be appealable on the authority of 28 U.S.C. § 1291." *United States v. Moussaoui*, 483 F.3d 220, 228 (4th Cir. 2007) (quoting *Carroll v. United States*, 354 U.S. 394, 403 (1957)). This Court has thus recognized that the government may appeal under 28 U.S.C. § 1291 in a criminal case where the order appealed satisfies each of the three requirements of the "collateral order doctrine" and "none of the traditional concerns

that come into play when the Government seeks to appeal in a criminal case are implicated." *Id.* at 232.[1]

This appeal readily satisfies both conditions. Like the post-judgment order appealed in *Moussaoui*, the order from which the government appeals here easily meets each of the three requirements of the collateral order doctrine: First, the order "conclusively determine[s] the disputed question," *Moussaoui*, 483 F.3d at 228 (citation omitted), because the district court made clear that it would not provide an FDPA designation unless and until "a higher court dispels the Court's concern that it lacks authority to act," JA 165. Second, it "resolve[s] an important issue completely separate from the merits of the action." *Moussaoui*, 483 F.3d at 228 (citation omitted). The merits of Higgs' criminal trial and sentencing concerned whether he should be convicted and sentenced to death—and he was; this appeal concerns only the separate issue of the manner in which that now-final sentence should be implemented. And third, the district court's refusal to make an FDPA

---

[1]     The collateral order doctrine is ordinarily invoked in circumstances where a party seeks to challenge an order entered before final judgment, but its framework—and its relevance here—focuses on the degree to which the challenged order is "independent of the cause itself" and "too important to be denied review." *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 546 (1949); *Carroll*, 354 US at 403 (citing *Cohen* to illustrate the sort of "sufficient independence from the main course of the prosecution" that would "warrant treatment as [a] plenary order[]," thereby making an order "appealable on the authority of 28 U.S.C. § 1291"). That independence and importance is, if anything, easier to satisfy with respect to a post-judgment order like the one at issue here.

designation at the time the sentence is to be implemented is "unreviewable on appeal from final judgment," *id.* at 228 (citation omitted), because the final judgment in Higgs's case was entered two decades ago and the appeal of that judgment has long since run its course.

This appeal also satisfies the other condition identified in *Moussaoui*, in that it does not implicate any of the "traditional concerns that come into play when the Government seeks to appeal in a criminal case." *Id.* at 232. As this Court recognized, those concerns are both constitutional and prudential. The constitutional concerns involve double-jeopardy considerations that might arise when the government seeks to appeal in circumstances where "success on the appeal would subject the defendant to a second trial." *Id.* at 228 (discussing *United States v. Wilson*, 420 U.S. 332, 344 (1975)). The prudential concerns, meanwhile, involve "the defendant's and public's interests in a speedy trial, and the dangers of prosecutorial harassment." *Id.*; *see Arizona v. Manypenny*, 451 U.S. 232, 246 (1981) (describing these same "prudential and constitutional interests" as the basis for the limits on government appeals in criminal cases).

Prior to the adoption of 18 U.S.C. §§ 3731 and 3742, the Supreme Court had invoked those concerns in declining to read general appeal provisions to authorize government appeals from district court decisions that, for example, dismissed indictments before jeopardy had attached or suppressed evidence that the

6

government intended to use at trial.  *See*, *e.g.*, *United States v. Sanges*, 144 U.S. 310 (1892) (no appeal from judgment quashing an indictment); *Di Bella v. United States*, 369 U.S. 121 (1962) (no appeal from pre-trial order suppressing evidence); *see also Manypenny*, 451 U.S. at 246.  Congress adopted provisions like Sections 3731 and 3742 in order to authorize appeals in such circumstances where general appellate provisions had been found insufficiently specific to provide authorization for appeal.  *See*, *e.g.*, *Wilson*, 420 U.S. at 336-39 (describing Congress's 1970 adoption of the Criminal Appeals Act, against the backdrop of those earlier decisions, to "authorize appeals whenever constitutionally permissible").

Unlike the types of appeals addressed in Sections 3731 and 3742, however, the government's appeal here does not implicate either set of concerns that have traditionally militated against appellate jurisdiction, and can thus be pursued "on the authority of 28 U.S.C. § 1291."  *Carroll*, 354 U.S. at 403.  As to the constitutional concerns, Higgs was already convicted and sentenced to death; the government's appeal here would not subject him to a second trial, but would simply enable implementation of the sentence already imposed.  And as to the prudential concerns, the appeal here obviously will not frustrate an interest in a speedy trial, nor does it subject Higgs to "prosecutorial harassment."  On the contrary, the government's appeal here is the only way to avoid what even the district court itself recognized would be a "windfall" for Higgs.  JA 165.

Accordingly, because "the conditions of the collateral order doctrine are satisfied, and the prudential concerns that traditionally militate against allowing the government to appeal in a criminal case favor or are at least neutral in respect to, the availability of a government appeal, . . . section 1291 affords a vehicle through which the government may seek appellate review" here. *Moussaoui*, 483 F.3d at 233 (quoting *United States v. Horn*, 29 F.3d 754, 769 (1st Cir. 1994)); *see United States v. McVeigh*, 106 F.3d 325, 332 (10th Cir. 1997) (same).

B.     Although Higgs quotes from this Court's decision in *Moussaoui*, *see* Mot. 6-7, he nowhere directly addresses the foregoing two-part test that led the Court to find that it had jurisdiction there. To the extent that his motion offers any relevant discussion at all, it appears to come in his two-sentence assertion that the government is seeking a modification of the criminal judgment, and that there was thus "nothing collateral about" the district court's order or the government's appeal. Mot. 7.

That assertion is incorrect. Although the government was not as clear as it could have been in the captioning of its original designation request, its briefing below made clear that it was requesting a supplemental order that would provide the designation required by the FDPA so that the criminal judgment could be carried out—which is not a modification of the criminal judgment, and simply implements the judgment's pre-existing reference to the requirements of the FDPA. *See* JA 158, 161; Gov't Br. 23-24. The district court recognized that the government sought such

8

a supplemental order, but concluded that it lacked authority under the FDPA to provide one, believing that the FDPA allowed designation of a State other than the State in which sentence is imposed only at the time of the original sentencing, *see* JA 161-65. The district court's December 29, 2020 order adopting that conclusion and refusing to enter a designation order is "sufficient[ly] independen[t] from the main course of the prosecution to warrant treatment as [a] plenary order[]." *Moussaoui*, 483 F.3d at 228 (quoting *Carroll*, 354 U.S. at 403). To hold otherwise would suggest that district courts can refuse to enter FDPA-required designations, thereby permanently preventing the government from carrying out a lawfully imposed capital sentence—and that Congress intended there to be no appeal mechanism by which the government can seek review of that disregard for the FDPA.

## II. ALTERNATIVELY, THIS COURT HAS AUTHORITY TO ISSUE A WRIT OF MANDAMUS

Alternatively, this Court could also speedily "dispel[] [the district court's] concern that it lacks authority to act," JA 165, through issuance of a writ of mandamus. *See* 4th Cir. Local Rule 21(b) (noting that "the Court ordinarily will decide the merits of [a mandamus] petition on the materials submitted without oral argument"). Higgs's contrary arguments lack merit.

Higgs's primary contention with respect to mandamus is that the writ cannot "be employed as a substitute for appeal in derogation of the[] clear policies [limiting

government appeals in criminal cases]." Mot. 11 (quoting *Will v. United States*, 389 U.S. 90, 97 (1967)) (second set of brackets in original). As already discussed, however, the policy-based constitutional and prudential considerations that support limitations on government appeals in criminal cases have no application in the circumstances of this case. Indeed, the very case on which Higgs relies—*Will*—recognizes that those policies provide no basis for limiting the use of mandamus in circumstances, like this one, where "the action of the trial court . . . overreached its judicial power to deny the Government the rightful fruits of a valid conviction." 389 U.S. at 97 (discussing *Ex parte United States*, 242 U.S. 27 (1916)).

In *Ex parte United States*, the district court had entered a post-judgment order that "permanent[ly] suspend[ed]" a defendant's sentence "based upon considerations extraneous to the legality of the conviction or the duty to enforce the sentence." 242 U.S. at 37. The effect of that order "was equivalent to a refusal to carry out the statute" that established the designated punishment. *Id.* at 37. Recognizing that allowing district courts "to refuse to execute such a sentence when imposed" would be inconsistent with "the distribution of powers made by the Constitution," *id.* at 41-42, the Supreme Court held that issuance of a writ of mandamus provided a proper means by which to correct the district court's error, *see id.* at 52-53.

10

Prior to Congress's adoption of Section 3742 in 1984, see Pub. L. No. 98-473, § 213(a), 98 Stat. 1837, 2011 (1984), many courts applied *Ex parte United States* in holding that the government could seek mandamus relief directing a district court "to resentence a defendant or order forfeiture." *United States v. Horak*, 833 F.2d 1235, 1249 (7th Cir. 1987) (collecting cases). And this case presents, if anything, an even closer analogy to *Ex parte United States*: as in that case, the government here seeks relief from a district court's post-judgment order that would have the effect of leaving the sentence nominally in place but "permanent[ly] suspend[ing]" the government's ability to implement it based on "considerations extraneous to the legality of the conviction." *Ex parte United States*, 242 U.S. at 37. As the Supreme Court recognized in *Will*, mandamus provides an appropriate remedy to correct an erroneous district court order of that nature. *See* 389 U.S. at 97.

Finally, Higgs argues that mandamus would be inappropriate because the government did not "strictly comply" with the rules governing the form of a mandamus petition. Mot. 12. That argument lacks merit. As this Court recognized in *United States v. Doe*, 962 F.3d 139 (4th Cir. 2020), an appeal may be "treated as a petition for mandamus if the party seeking review has standing and has substantially complied with the requirements of [Fed. R. App. P.] 21(a)," *id.* at 145 (quoting *In re Wash. Post Co.*, 807 F.2d 383, 388 (4th Cir. 1986)) (brackets in original). The government's filing here easily satisfies that substantial compliance

11

standard: it contains all of the substantive elements required by Rule 21(a); complies with the abbreviated word limits applicable to a petition for a writ of mandamus, *see* Fed. R. App. P. 21(d); and was "serve[d] . . . on all parties to the proceeding in the trial court," Fed. R. 21(a)(1). The government also "provide[d] a copy to the trial-court judge" on January 6, 2021. Fed. R. 21(a)(1); *see* ECF No. 12 (Jan. 7, 2021) (Certificate of Service).[2] And while the government did not caption its filing "*In re United States*," as Higgs suggests was required, that simply reflects the fact that the government seeks mandamus relief in the alternative, relying primarily on this Court's appellate jurisdiction under 28 U.S.C. § 1291. *See* Fed. R. App. P. 12(a) ("Upon receiving a copy of the notice of appeal . . . , the circuit clerk must docket the appeal under the title of the district-court action").

---

[2] The government intended to provide a copy of its pleading to the district court at the time of filing, but did not do so here as a result of an oversight when filing its brief on December 31. The copy has now been provided, however, and Rule 21(a) contains no requirement that provision of the required copy to the district court be made simultaneously with service on the parties.

# CONCLUSION

Higgs's motion to dismiss the government's appeal and petition for a writ of mandamus should be denied.

Respectfully submitted,

Robert K. Hur
United States Attorney

/s/

Ellen E. Nazmy
Special Assistant United States Attorney
United States Attorney's Office
6500 Cherrywood Lane, Suite 200
Greenbelt, Maryland 20770
(301) 344-4433

/s/

Jeffrey A. Hall
Counsel to the Assistant Attorney General
Civil Division, Department of Justice
950 Pennsylvania Ave. NW
Washington, DC 20530
Tel: (202) 353-8679
Email: jeffrey.a.hall@usdoj.gov

January 8, 2021

<h1 style="text-align:center">CERTIFICATE OF COMPLIANCE</h1>

1.      This brief has been prepared using:

**Microsoft Word, Times New Roman, 14 Point**

2.      EXCLUSIVE of the table of contents; table of citations; signature block; statement with respect to oral argument; any addendum containing statutes, rules, or regulations; and the certificates of counsel, the brief contains 2,972 words.

I understand that a material misrepresentation can result in the Court's striking the brief and imposing sanctions.  If the Court so directs, I will provide an electronic version of the brief and/or a copy of the word or line print-out.

/s/ _____
Jeffrey A. Hall
Counsel to the Assistant Attorney General

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on the 8th day of January 2021, I electronically

filed the foregoing with the Clerk of Court using the CM/ECF System, which will

send notice of such filing to the following registered CM/ECF users:

> Leigh M. Skipper
> Chief Federal Defender
> Matthew Lawry
> Assistant Federal Defender
> 601 Walnut St Ste 545 W.
> Philadelphia, PA 19106
> 215-928-0520
>
> Steven H. Sachs, Esq.
> WilmerHale LLP
> 1875 Pennsylvania Ave.
> Washington, DC 20006
> (202) 663-6000

I FURTHER CERTIFY that on the 8th day of January 2021, I electronically

mailed the foregoing to:

> Hon. Peter J. Messitte
> U.S. District Judge
> MDD_PJMChambers@mdd.uscourts.gov

> /s/_____
> Ellen E. Nazmy
> Special Assistant United States Attorney

> /s/_____
> Jeffrey A. Hall
> Counsel to the Assistant Attorney General