# IN THE UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

## UNITED STATES OF AMERICA,

Appellant,

v.

## DUSTIN HIGGS,

Appellee.

*Appeal from the United States District Court for the District of Maryland, Southern Division, Honorable Peter J. Messitte, U.S. District Judge*

## REPLY BRIEF OF APPELLANT AND, IN THE ALTERNATIVE, REPLY IN SUPPORT OF PETITION FOR WRIT OF MANDAMUS

**Jeffrey A. Hall**
**Counsel to the Assistant**
  **Attorney General**
**Civil Division**
**Department of Justice**
**950 Pennsylvania Ave. NW**
**Washington, DC 20530**
**(202) 353-8679**

**Robert K. Hur**
**United States Attorney**

**Ellen E. Nazmy**
**Special Assistant United States Attorney**
**6500 Cherrywood Lane, Suite 200**
**Greenbelt, Maryland 20770**
**(301) 344-4433**

**January 9, 2021**

*Attorneys for the Appellant*

**TABLE OF CONTENTS**

INTRODUCTION .......................................................................................................1

ARGUMENT ...........................................................................................................4

    I.      THE DISTRICT COURT ERRONEOUSLY REFUSED TO
           DESIGNATE INDIANA LAW UNDER THE FDPA TO GOVERN
           THE MANNER OF IMPLEMENTATION OF HIGGS'S
           SENTENCE............................................................................................4

    II.     THIS COURT HAS JURISDICTION TO GRANT RELIEF ............13

CONCLUSION.........................................................................................................15

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

## CASES

*Andres v. United States*,
333 U.S. 740 (1948)......................................................................................8, 9

*Barr v. Roane*,
140 S. Ct. 353 (2019)........................................................................................8

*Bucklew v. Precythe*,
139 S. Ct. 1112 (2019)......................................................................................3

*Calderon v. Thompson*,
523 U.S. 538 (1998).........................................................................................9

*Dillon v. United States*,
560 U.S. 817 (2010).......................................................................................11

*Ex parte United States*,
242 U.S. 27 (1916).........................................................................................13

*Graham Cty. Soil & Water Conservation Dist. v. United States ex rel. Wilson*,
559 U.S. 280 (2010).........................................................................................7

*Griffin v. Oceanic Contractors, Inc.*,
458 U.S. 564 (1982).........................................................................................9

*In re Fed. Bureau of Prisons' Execution Protocol Cases*,
955 F.3d 106 (D.C. Cir. 2020).................................................................5, 6, 9

*In re Trump*,
958 F.3d 274 (4th Cir. 2020) .........................................................................14

*Morales v. Trans World Airlines, Inc.*,
504 U.S. 374 (1992).......................................................................................12

*Radzanower v. Touche Ross & Co.*,
426 U.S. 148 (1976)..................................................................................12

*United States v. Tuck Chong*,
123 F. Supp. 2d 563 (D. Haw. 1999) .........................................................9

*United States v. Wilson*,
503 U.S. 329 (1992)....................................................................................7

## FEDERAL STATUTES

18 U.S.C. § 3582 ..................................................................................11, 12

18 U.S.C. § 3594 ....................................................................................5, 11

18 U.S.C. § 3596.....................................................................................*passim*

26 U.S.C. § 72(t)(2)(H)(iii)(I) .......................................................................7

28 U.S.C. § 1291 ...............................................................................3, 13, 14

# INTRODUCTION

More than 20 years ago, Dustin Higgs received nine death sentences in federal court in Maryland for kidnapping and murdering three women on federal land. After resuming federal executions last summer, the United States is prepared to carry out Higgs's capital sentence, and his victims' families are planning to travel to Indiana to witness the administration of justice they have long awaited. Higgs responds with the remarkable contention that his *federal* death sentence can *never* be implemented because (1) Maryland repealed its state death penalty law in 2013; (2) the district court disavowed its authority under the Federal Death Penalty Act (FDPA), 18 U.S.C. § 3596(a), to designate Indiana as the alternate source of law prescribing the manner of implementation of the sentence; and (3) this Court lacks jurisdiction to review that abdication of duty, no matter how erroneous.

It would be shocking if the law required that result—de facto state nullification of a federal death sentence, based on a district court's view that it was powerless to designate an alternative state, with no prospect of review by a higher court. Unsurprisingly, the law requires no such thing. This is instead a straightforward case under basic principles of statutory interpretation and appellate jurisdiction. Although the FDPA generally provides that, "[w]hen the sentence is to be implemented," "implementation of the sentence" shall occur "in the manner provided by the law of the State in which the sentence is imposed," the statute

1

specifically addresses what the district court must do "[i]f the law of the State does not provide for implementation of a sentence of death": "the court shall designate another State, the law of which does provide for the implementation of a sentence of death, and the sentence shall be implemented in the latter State in the manner prescribed by such law." 18 U.S.C. § 3596(a).

Higgs resists the plain meaning of that statutory mandate, contending that the phrase "law of the State in which the sentence is imposed" means that the district court can designate an alternative State *only* at the time of sentencing. But there is no plausible textual path to reach that conclusion, and Higgs offers no contextual explanation for why Congress would have adopted and the President would have signed a statute that allows federal death sentences to be effectively commuted by state legislatures. Nor does Higgs explain how, if the FDPA mandates the designation of an alternative State post-sentencing, an order making such a designation could violate principles of criminal sentencing—particularly given that his criminal judgment expressly incorporates the FDPA. Ultimately, Higgs all but concedes that he is just making a "gotcha" argument, but the loophole he tries to create does not exist.

Higgs fares no better with his startling assertion that this Court is powerless to correct the district court's error, even if its refusal to follow a statutory command is clear and indisputable. The district court certainly did not think its order was

unreviewable; it expressly contemplated contrary direction from a "higher court." JA 165. And as explained further in the government's response to Higgs's motion to dismiss, the order denying the government's post-judgment motion is a final decision reviewable under this Court's settled construction of 28 U.S.C. § 1291—or at a minimum through mandamus, which is plainly warranted given the district court's nullification of the Executive Branch's sovereign authority to carry out a lawfully imposed death sentence for an egregious federal crime.

After the extraordinary efforts by federal prosecutors, witnesses, jurors, victims' family members, and the courts to secure a death sentence—and after the victims' families have planned for the sentence to finally be carried out—it simply cannot be the law that Maryland's repeal of its own death penalty seven years ago bars implementation of Higgs's federal sentence. All involved in this lengthy and highly significant case "deserve better" than such an implausible and illogical result. *Bucklew v. Precythe*, 139 S. Ct. 1112, 1134 (2019).

Accordingly, whether by appeal or mandamus, this Court should set aside the order below and direct the district court to designate Indiana law to govern the manner of implementation of Higgs's sentence. And despite this Court's recent scheduling order, the government continues to respectfully submit that the Court should issue its judgment effective by January 12, so that the non-prevailing party

has the opportunity to seek review from the Supreme Court before the scheduled execution on January 15.

**I.     THE DISTRICT COURT ERRONEOUSLY REFUSED TO DESIGNATE INDIANA LAW UNDER THE FDPA TO GOVERN THE MANNER OF IMPLEMENTATION OF HIGGS'S SENTENCE**

The FDPA provides a straightforward direction that resolves this case: "[w]hen the sentence is to be implemented," "implementation of the sentence" generally shall occur "in the manner provided by the law of the State in which the sentence is imposed"—here, Maryland—but "[i]f the law of the State does not provide for implementation of a sentence of death," then the district "court shall designate another State, the law of which does provide for the implementation of a sentence of death, and the sentence shall be implemented in the latter State in the manner prescribed by such law."  18 U.S.C. § 3596(a); *see* Gov't Br. 13-23.  Higgs offers no basis in law or logic for why the statute should be read to strip the district court of its power and duty to make such a designation simply because Maryland repealed its death penalty laws only after Higgs was sentenced.  And his contention that such a statutorily compelled designation would constitute an improper modification of his sentence similarly lacks merit.

A.     Higgs does not dispute that the FDPA's provision for designating an alternative State is "specifically designed to prevent the choices of an individual state from effectively nullifying the federal death penalty." *In re Fed. Bureau of Prisons'*

*Execution Protocol Cases*, 955 F.3d 106, 120 (D.C. Cir. 2020) (Katsas, J., concurring) ("*Execution Protocol Cases*"), *cert. denied sub nom. Bourgeois v. Barr*, 141 S. Ct. 180 (2020); *accord id.* at 142 (Rao, J., concurring); *id.* at 145 (Tatel, J., dissenting). Higgs instead purports to identify a temporal constraint on when the designation required by Section 3596(a) can occur. In his view (Br. 25-26), such a designation can be made *only at the time of sentencing*; after that, the provision can never be invoked.

Higgs's proposed limitation has no footing in the statutory text, structure, history, or purpose. Rather than limiting the designation of an alternative State to the time of sentencing, the statutory provision is captioned "*Implementation* of a sentence of death." 18 U.S.C. § 3596(a) (emphasis added); *compare* 18 U.S.C. § 3594 ("*Imposition* of a sentence of death") (emphasis added). The first sentence of the section provides direction about the custody of a death-row inmate "until exhaustion of the procedures for appeal of the judgment of conviction and for review of the sentence"—typically many years after the sentence is imposed. 18 U.S.C. § 3596(a). The second sentence provides the default direction about the manner of implementation "*[w]hen the sentence is to be implemented*." *Id.* (emphasis added). And the third sentence provides for alternative direction about how "*the sentence shall be implemented*." *Id.* (emphasis added).

Higgs focuses (Br. 25-26) on the final words of the second sentence of Section 3596(a), which reads in full: "When the sentence is to be implemented, the Attorney General shall release the person sentenced to death to the custody of a United States marshal, who shall supervise implementation of the sentence in the manner prescribed by the law of the State in which the sentence is imposed." He contends (Br. 25-26) that the second sentence's reference to "the law of the State in which the sentence *is imposed*" limits the third sentence's alternative-State designation direction to the time the criminal sentence is imposed. But that is doubly flawed.

Even in the second sentence itself, the use of the present-tense phrase "sentence is imposed" does not mean that the specified law is determined at the time of sentencing. To the contrary, the second sentence expressly addresses what to do "*[w]hen the sentence is to be implemented*"—namely, the marshal shall "supervise implementation of the sentence in the manner prescribed by the law of the State in which the sentence is imposed." By definition, this occurs long after the sentence was imposed, and courts applying this provision thus have looked to the law of the state at the time the sentence is being implemented, not when the sentence was imposed. *See, e.g.*, *Execution Protocol Cases*, 955 F.3d at 123-124 (Katsas, J., concurring); *id.* at 142-143 (Rao, J., concurring); *id.* at 146-147 (Tatel, J., dissenting). Even Higgs does not dispute this point. Although it might have been more grammatically precise for Congress to refer to the law of the State where the

6

sentence "was imposed" rather than "is imposed," the statutory context leaves no doubt about the meaning of the provision. *See*, *e.g.*, *Graham Cty. Soil & Water Conservation Dist. v. United States ex rel. Wilson*, 559 U.S. 280, 290 (2010) ("Courts have a 'duty to construe statutes, not isolated provisions.'") (citation omitted); *cf.* 26 U.S.C. § 72(t)(2)(H)(iii)(I) (referring to a "1-year period beginning on the date on which a child of the individual *is* born") (emphasis added).

In any event, there is no basis to read the phrase "sentence is imposed" into the third sentence. That sentence simply begins with "[i]f the law of the State does not provide for implementation of a sentence of death." 18 U.S.C. § 3596(a). That references the default State mentioned in the prior sentence—the State of sentencing—but it does not reference that State's law *at the time of sentencing*. Rather, in describing that State's law, it uses the present tense phrase "does not provide for implementation of a sentence of death," which naturally looks to the law at the time "*[w]hen the sentence is to be implemented*," as the second sentence expressly begins. *Id.* (emphasis added).[1]

The statutory history and purpose confirm that Higgs's proposed construction is untenable. He acknowledges (Br. 28-29) that the result of his reading is that a

---

[1] Higgs' reliance (Br. 25-26) on the particular statute at issue in *United States v. Wilson*, 503 U.S. 329 (1992), is thus misplaced, because that statute did not include any language akin to Section 3596(a)'s express statement that it applies "*[w]hen the sentence is to be implemented*." 18 U.S.C. § 3596(a) (emphasis added).

State's repeal of *its own* death penalty would effectively nullify previously imposed *federal* capital sentences. But he provides no explanation for why Congress would have created such a system, particularly given that the Supreme Court has interpreted the FDPA and its statutory predecessor to avoid creating such a gap or "hiatus" in the statute's coverage. *Andres v. United States*, 333 U.S. 740, 745 n.6 (1948); *see Barr v. Roane*, 140 S. Ct. 353, 353 (2019) (statement of Alito, J.) (cautioning against reading the FDPA in a way that "could well make it impossible to carry out executions of prisoners sentenced in some States"). Higgs's reading, moreover, would not simply produce a gap; it would create *the very loophole* that Congress wrote the alternative-State provision of Section 3596(a) to avoid.

Rather than denying that his reading creates such a loophole, Higgs describes that result with euphemisms. He states that his position means "that the Government would have difficulty executing a handful (or less) of death-sentenced prisoners." Br. 28; *see* Br. 29 (referring to a "disruption in the Government's execution plans for a few prisoners"). But Higgs's position is not that it would be "difficult[]" for the government to execute him or that the government would have to change its "execution plans"; his position is that the government *cannot* execute him because Maryland law no longer provides for implementation of death sentences and the district court can no longer designate an alternative State. That is no small matter, even if only a "few" death sentences are nullified. It would cast aside decades of

8

careful work by prosecutors, witnesses, jurors, and many courts, including this one. And it would "unsettl[e]" the "expectations" of the victims' families that Higgs would receive death for his heinous crimes—a "profound injury" to them and to the government's "'powerful and legitimate interest in punishing the guilty.'" *Calderon v. Thompson*, 523 U.S. 538, 539 (1998) (citation omitted).

To justify such drastic and illogical results—which the district court rightly recognized as a "windfall" and seemed to accept would be "absurd," JA 164-65— Higgs would have to show that the FDPA unambiguously mandates his reading. But he cannot come close to making that showing. The Supreme Court in *Andres*, for example, read the statutory term "State" in the FDPA's predecessor statute to include federal territories to avoid creating a gap in the Act's coverage. 333 U.S. at 745 n.6. The Court has engaged in even more textually difficult—but still "available"— readings to avoid absurd results. *Griffin v. Oceanic Contractors, Inc.*, 458 U.S. 564, 575 (1982). No such straining is required here. The court need only apply the plain meaning of the FDPA to achieve what Congress undoubtedly sought to accomplish—"that the federal death penalty might be applied anywhere in the nation, although" some States decide not to apply it to their own inmates. *United States v. Tuck Chong*, 123 F. Supp. 2d 563, 568 (D. Haw. 1999); *see*, *e.g.*, *Execution Protocol Cases*, 955 F.3d at 120 (Katsas, J., concurring) (explaining that the FDPA "sought to ensure a workable and expanded system of capital punishment").

9

Finally, Higgs suggests (Br. 27-28) that the government has acquiesced in his position that an alternative State can be designated only at the time of sentencing. That is false. Higgs cites cases in which the government asked district courts to designate alternative States at the time of sentencing when the State in which the federal inmate was convicted *had already* repealed its death penalty. That the government made the request at that time in those cases—when it was evident from the start that an alternative State would have to be designated—says nothing about the government's position in the circumstance arising here, when the State repealed its death penalty only years later. *See* Gov't Br. 19 n.2. If anything, the parties' conduct only further undermines Higgs's position. The government asked the district court to designate an alternative State within weeks of successfully resuming the implementation of capital sentences. But *for years* after Maryland repealed its death penalty, Higgs filed claims seeking to vacate his sentences and obtain resentencing, without ever once suggesting that his current death sentences could no longer be implemented—and, indeed, continued challenges to those sentences that *could only have injured him* under the belated theory he now advances, by exposing him to a resentencing in which an alternative State to Maryland could be designated.

B.     Higgs separately argues that, even if the government is correct that the FDPA requires district courts to make an alternative designation "[w]hen the sentence is to be implemented," 18 U.S.C. § 3596(a), that statutory command is

10

"beside the point." Br. 15. In his view, the FDPA's specific instruction must give way to a general rule that a "'judgment of conviction that includes [a sentence of imprisonment] constitutes a final judgment' and may not be modified by a district court except in limited circumstances." *Id.* (quoting *Dillon v. United States*, 560 U.S. 817, 824 (2010) (quoting 18 U.S.C. § 3582(b)) (alteration in original)). That argument is incorrect for multiple reasons.

*First*, the judgment here expressly refers to the requirements of Section 3596. *See* JA 53. If the government's reading of the FDPA is correct, then the need to designate an alternative to Maryland now that the sentence is to be implemented follows from the judgment itself (as well as the FDPA). Higgs's reliance (Br. 21-22) on cases in which courts found that actual modifications to criminal judgments were impermissible is thus misplaced, because the criminal judgment here already invites the designation the government has requested.

*Second*, even setting aside the express reference in Higgs's judgment to the FDPA, the designation required by Section 3596(a) involves implementation of the sentence, not a modification of the sentence. As the government showed, Gov't Br. 18-19, 25-26, the FDPA itself distinguishes between the "[i]mposition of a sentence of death" and the "[i]mplementation of a sentence of death." The former is governed by Section 3594; the latter, at issue here, is governed by Section 3596. When a district court makes the designation required by 3596(a), therefore, it does not

11

"[i]mpose" a new or modified sentence, but simply facilitates the "[i]mplementation" of the original sentence.  Higgs ignores that textual contrast completely, but it shows that a general rule against sentence modifications has no application here.

*Finally*, even if it would constitute a modification of a federal capital defendant's sentence to designate an alternative State post-sentencing, the FDPA's specific provisions would supersede any general rule against sentence modifications. *See*, *e.g.*, *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 384 (1992) ("It is a commonplace of statutory construction that the specific governs the general."); *Radzanower v. Touche Ross & Co.*, 426 U.S. 148, 155 (1976).  The provision on which Higgs relies was adopted in 1984 and is addressed to the "[i]mposition of a sentence of imprisonment."  18 U.S.C. § 3582 (section heading); *see* Pub. L. 98-472, Title II, § 212(a)(2), 98 Stat. 1998 (1984).  It does not speak directly to *capital* sentences at all, let alone express a "clear intention" to foreclose adjustments to such capital sentences that might become necessary in light of intervening changes of law. *Radzanower*, 426 U.S. at 153-54.  Instead, Congress directly addressed that distinct topic a decade later in the FDPA, 18 U.S.C. § 3596(a).  It is that later-enacted, directly on-point provision that provides the governing rule here.  *See Radzanower*, 426 U.S. at 153 (indicating that a "statute covering a more generalized spectrum" will not take precedence over "a statute dealing with a narrow, precise, and specific

12

subject" unless the general statute is "later enacted" and expresses a "clear intention" to displace the more specific provision). Higgs's attempts to declare the FDPA "irrelevant," Br. 24, thus fail.

## II. THIS COURT HAS JURISDICTION TO GRANT RELIEF

No doubt recognizing the futility of defending the district court's order on the merits, Higgs alternatively argues that the district court's error is beyond appellate correction, such that this Court must decline the district court's invitation to "dispel[] [its] concern that it lacks authority to act." JA 165. That argument, too, is incorrect.

As the government has explained at greater length in its response to Higgs's motion to dismiss, this Court has jurisdiction under 28 U.S.C. § 1291 to review the district court's order denying the government's post-judgment motion. *See* Gov't Opp. to Motion to Dismiss (MTD Opp.) 3-9; *see also* Higgs Br. 29 n.6 (cross-referencing motion to dismiss). If the Court nevertheless determines that Section 1291 would not allow the Court to resolve this case with sufficient dispatch to allow the January 15, 2021 execution to go forward as scheduled, the Court can and should issue a writ of mandamus to correct the district court's error. *See Ex parte United States*, 242 U.S. 27, 37 (1916) (holding writ of mandamus appropriate to correct a district court's post-judgment order that "permanent[ly] suspend[ed]" a defendant's sentence "based upon considerations extraneous to the legality of the conviction or the duty to enforce the sentence"); *see also* MTD Opp. 9-12. Contrary to Higgs's

contentions, Higgs Br. 31-33, the government satisfies each of the three requirements for mandamus relief.

*First*, for the reasons discussed above and in the government's opening brief, the FDPA imposes a "clear and indisputable" duty that the district court violated by refusing to make the requested designation. *In re Trump*, 958 F.3d 274, 281 (4th Cir. 2020) (en banc). *Second*, if the Court is barred from hearing an appeal under Section 1291 even though the district court has finally decided the government's post-judgment motion, then the government has no other "adequate means of obtaining the relief sought." *Id.* *Third*, "the writ is appropriate under the circumstances" here. *Id.* Indeed, given the government's clearly correct interpretation of the FDPA, no reason exists *not* to grant the writ here if doing so would be the only means by which to allow the government to carry out Higgs's sentence. Even the district court recognized that "[i]t might be said that there is every reason to permit this execution to go forward: Higgs's crimes were an abomination, central responsibility is indisputable, and he had a fair trial on both in terms of guilt and the applicability of the death penalty before a jury of his peers." JA 165. It was only the district court's clear legal error that prevented it, "[u]ntil a higher court dispels the Court's concern that it lacks authority," from making the appropriate decision to designate Indiana law under Section 3596(a). *Id.* This Court can and should provide that invited correction.

14

## CONCLUSION

This Court should direct the district court to designate Indiana pursuant to the FDPA as the State whose laws shall prescribe the manner of implementing Higgs's execution. And it should make clear that its judgment is effective immediately, so that Higgs's execution can proceed as planned on January 15, 2021.

Respectfully submitted,

Robert K. Hur
United States Attorney

/s/
Ellen E. Nazmy
Special Assistant United States Attorney
United States Attorney's Office
6500 Cherrywood Lane, Suite 200
Greenbelt, Maryland 20770
(301) 344-4433

/s/
Jeffrey A. Hall
Counsel to the Assistant Attorney General
Civil Division, Department of Justice
950 Pennsylvania Ave. NW
Washington, DC 20530
Tel: (202) 353-8679
Email: jeffrey.a.hall@usdoj.gov

January 9, 2021

# CERTIFICATE OF COMPLIANCE

1.     This brief has been prepared using:

**Microsoft Word, Times New Roman, 14 Point**

2.     EXCLUSIVE of the table of contents; table of citations; signature block; any addendum containing statutes, rules, or regulations; and the certificates of counsel, the brief contains 3,541 words.

I understand that a material misrepresentation can result in the Court's striking the brief and imposing sanctions.  If the Court so directs, I will provide an electronic version of the brief and/or a copy of the word or line print-out.

/s/                     
Jeffrey A. Hall
Counsel to the Assistant Attorney General

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on the 9th day of January 2021, I electronically filed the foregoing with the Clerk of Court using the CM/ECF System, which will send notice of such filing to the following registered CM/ECF user:

> Leigh M. Skipper
> Chief Federal Defender
> Matthew Lawry
> Assistant Federal Defender
> 601 Walnut St. Ste. 545 W.
> Philadelphia, PA 19106
> 215-928-0520
>
> Steven H. Sachs, Esq.
> WilmerHale LLP
> 1875 Pennsylvania Ave.
> Washington, DC 20006
> (202) 663-6000

I FURTHER CERTIFY that on the 9th day of January 2021, I electronically mailed the foregoing to:

> Hon. Peter J. Messitte
> U.S. District Judge
> MDD_PJMChambers@mdd.uscourts.gov

> /s/_____
> Ellen E. Nazmy
> Special Assistant United States Attorney
>
> /s/_____
> Jeffrey A. Hall
> Counsel to the Assistant Attorney General